602 So.2d 1264 (1992)
GEORGIA INSURERS INSOLVENCY POOL, Petitioner,
v.
Richard BREWER, et al., Respondents.
No. 78415.
Supreme Court of Florida.
June 25, 1992.
*1265 Elizabeth C. Wheeler of Johnson and Bussey, P.A., Orlando, for petitioner.
David S. Glicken of the Law Office of David S. Glicken, Orlando, for respondents.
McDONALD, Justice.
We review Georgia Insurers Insolvency Pool v. Brewer, 583 So.2d 377, 379 (Fla. 1st DCA 1991), wherein the district court certified the following question as being of great public importance:[1]
WHETHER THE CONDUCT OF AN INSOLVENT INSURER DOING BUSINESS IN FLORIDA MAY BE SHIFTED TO GEORGIA INSURERS INSOLVENCY POOL SO AS TO SATISFY THE MINIMUM CONTACTS REQUIREMENT OF THE DUE PROCESS CLAUSE AND VEST JURISDICTION BY THE FLORIDA COURTS OVER THE GEORGIA INSOLVENCY POOL UNDER SECTION 48.193, FLORIDA STATUTES?
We answer the certified question in the negative and disapprove the opinion of the district court.
This case arose from an automobile accident that killed Sandra Bentley and injured her three children. The accident occurred in Florida while Richard Brewer, a Florida resident, was driving a tractor-trailer owned by him, but leased to J.D. Ray Company, a Georgia company. Brewer, acting as an independent contractor to Ray, was insured under a policy issued by Allied Insurance Company, an Indiana corporation doing business in Florida and in Georgia. *1266 Ray's president, J.D. Ray, purchased the Allied policy through an insurance agent in Georgia.[2] The terms of the policy covered owners of vehicles leased to Ray.
After the accident, Allied became insolvent. The plaintiffs (the estate of Sandra Bentley and her survivors) filed suit in Florida against Brewer and Ray. The Georgia Insurers Insolvency Pool (GIIP) successfully defended Ray by establishing through summary judgment that Brewer was acting as an independent contractor and that Ray was thus not negligent. At trial the jury found Brewer negligent in causing the fatal accident. Thereafter, the plaintiffs filed a motion for leave to add Allied, the Florida Insurance Guaranty Association (FIGA), and GIIP as defendants on a third-party beneficiary claim. The trial court denied the motion to add Allied, but granted the motion to add FIGA[3] and GIIP. GIIP appealed, asserting lack of personal jurisdiction.
The district court concluded that the plaintiffs' damages were "covered claims" under the GIIP statute and that GIIP stood in the place of Allied, which was conceded as having sufficient minimum contacts with Florida. Brewer, 583 So.2d at 379. It further held that GIIP's statutory scope of authority was sufficient to satisfy the purposeful availment requirement of due process, but certified the jurisdictional question to this Court.
Florida's long-arm statute, section 49.193, Florida Statutes (1991), sets forth the various activities by a nonresident that will give rise to personal jurisdiction.[4] There is no question that Allied, which was authorized to do business in Florida and was "[o]perating, conducting, engaging in, or carrying on a business or business venture," id. at subsection 48.193(1)(a), in Florida, satisfies both section 48.193 and the due process requirements needed to subject Allied to the personal jurisdiction of this state. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
GIIP is a statutory entity created by the Georgia Insurers Insolvency Pool Act which requires that all insurers doing business in Georgia become members and absorb the costs of administering the pool. Ga. Code Ann. §§ 33-36-1 to 33-36-19 (Michie 1990). Upon a member insurer's insolvency, GIIP insures all "covered claims" of the insolvent insurer for a limited period of time. Ga. Code Ann. § 33-36-9. When Allied became insolvent, GIIP assumed the role of insurer of Allied's covered claims, "with all the rights, duties, and obligations *1267 of the insolvent insurer."[5] The issue is thus not whether GIIP stood in the place of Allied for purposes of covered claims, but whether GIIP stands in Allied's place for purposes of personal jurisdiction.
The central focus in determining personal jurisdiction is "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579-80, 53 L.Ed.2d 683 (1977); Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).
This is not a situation where Allied acted as an agent of GIIP, thus clearly satisfying section 48.193.[6] Unlike a pure agent-principal relationship where all of one party's activities are imputed to another, GIIP's statutorily derived obligations are not wholly coextensive with Allied's, but rather are restricted to those covered claims that arise from policies issued by insurers authorized to do business in Georgia and are made by policyholders or insureds who are Georgia residents at the time of the loss. Ga. Code Ann. § 33-36-3(2)(A). Its responsibilities, with respect to Allied's covered claims, are substantive obligations of supplying limited amounts of insurance under limited circumstances. These responsibilities do not estop GIIP from claiming lack of personal jurisdiction.
Obligations arising from incidents occurring in another state alone do not result in personal jurisdiction. Meyer v. Auto Club Ins. Ass'n, 492 So.2d 1314 (Fla. 1986). Nothing in GIIP's statutory provisions indicates that GIIP or the Georgia Assembly intended to shift GIIP's member insurer's jurisdictional contacts to GIIP. Without such an intent being evident in GIIP's statutes, the due process analysis in Rush, as well as that in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and Kulko v. Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), compels that an independent basis of personal jurisdiction over GIIP be established apart from Allied's activities in this state.
The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
Hanson v. Denckla, 357 U.S. at 253, 78 S.Ct. at 1239-40.
GIIP did not transact business, maintain offices, supply goods, commit torts, own real property, or do anything of the kind in this state. Thus, subsections 48.193(1)(a) through (c) of the long-arm statute clearly are not met. In addition, GIIP did not enter into a contract to insure a person in this state. § 48.193(1)(d). The insurance contract in question is solely between Allied and Ray. GIIP's statutory obligations to cover its member insolvent insurers' contractual obligations cannot be deemed as contractual in nature, thus amounting to "[b]reaching a contract in this state by failing to perform acts required by the *1268 contract to be performed in this state." § 48.193(1)(g); see South Carolina Ins. Guar. Ass'n v. Underwood, 527 So.2d 931 (Fla. 5th DCA 1988) (Cowart, J., concurring). Moreover, GIIP's activities clearly are not so substantial or continuous to give rise to general jurisdiction under subsection 48.193(2). Therefore, GIIP's activities do not fall within the purview of Florida's long-arm statute.
Even if the requirements of section 48.193 were satisfied, the minimum contacts requirements of due process are not met in this case.[7]International Shoe, 326 U.S. at 316, 66 S.Ct. at 158, dispelled mechanistic approaches to personal jurisdiction by signalling the modern jurisprudential method of engaging in a twofold constitutional inquiry: (1) whether the acts of the nonresident defendant give rise to sufficient "minimum contacts" with the forum state such that (2) maintaining a suit there "does not offend `traditional notions of fair play and substantial justice.'" (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Factors that go into determining whether sufficient minimum contacts exist include the foreseeability that the defendant's conduct will result in suit in the forum state and the defendant's purposeful availment of the forum's privileges and protections. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
That GIIP's member insurers, like Allied, would write policies in Georgia that covered risks arising in Florida was no doubt foreseeable. Foreseeability in this sense "alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). The foreseeability that is crucial to due process is whether the defendant's conduct and activities in the state are such that "`he should reasonably anticipate being haled into court there.'" Burger King, 471 U.S. at 474, 105 S.Ct. at 2183 (quoting World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567). GIIP's statutory provisions address the possibility of double recovery under statutory insurance guaranty associations of other states and provide, in construing GIIP's statutes, that with "a covered claim which may be recoverable under this chapter and under an insolvency fund or its equivalent in another state, the sole recovery ... shall be under the insolvency fund or its equivalent of the state of residence of the insured." Ga. Code Ann. § 33-36-10(a).[8] This provision *1269 is silent on the issue of jurisdiction. In light of the clear legislative intent to protect only Georgia residents, however, the provision means that a claimant must first exhaust the remedies under the statutory insurance guaranty fund of his or her state, and, if there is no full recovery, that claimant must then sue an equivalent fund in the forum of another state.
Our unwillingness to hale GIIP into the courts of this state is consistent with notions of "fair play and justice." International Shoe, 326 U.S. at 320, 66 S.Ct. at 160. As the Supreme Court stated,
courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."
Burger King, 471 U.S. at 477, 105 S.Ct. at 2184 (quoting World-Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. at 564). Insurers do not limit their contractual obligations to territorial boundaries. If statutory guarantors are required to litigate in every forum where an insurer's covered risks lie, statutory insurance guaranty funds would be subject to the possibility of claims and suits in numerous jurisdictions. While these funds could raise their assessments to cover the costs of litigating in foreign fora, the expense of obtaining counsel and litigating in other states could be cost-prohibitive and could impede the states' shared social purpose to protect their residents from the insolvency of their insurers. Instead of serving their purpose in providing efficient and effective relief to their state residents, these statutory guarantors would be expending their resources litigating in the courts of other states. In addition, Florida's interest in ensuring that its residents are fairly compensated is not compelling in this case because the plaintiffs have already received protection under the Florida Insurance Guaranty Association. See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
In summary, we conclude that Allied's activities, amounting to minimum contacts with Florida, cannot be shifted to GIIP or used as a basis for jurisdiction over it. Accordingly, we answer the certified question in the negative. Additionally, we conclude that the Bentleys have failed to establish that GIIP's activities, independent to those of Allied, gave rise to personal jurisdiction. The opinion under review is quashed and the cause remanded with instructions to dismiss GIIP from this proceeding.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
[2] It is unclear from the record exactly where the contract for the policy was entered into or where it was written. Although the policy appears to have been issued through a broker in Satellite Beach, Florida, J.D. Ray's deposition states that he procured the policy through an insurance agent in Jackson, Georgia.
[3] The trial court entered a judgment against FIGA, holding that the estate and each survivor had separate claims up to $300,000. FIGA appealed and the district court held that, under a wrongful death action, multiple survivors have only a single claim under section 631.57, Florida Statutes (1991). Florida Ins. Guar. Ass'n v. Bentley, 583 So.2d 729 (Fla. 1st DCA), review denied, 593 So.2d 1051 (Fla. 1991).
[4] Section 48.193, Florida Statutes (1991), provides in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
(b) Committing a tortious act within this state.
(c) Owning, using, or possessing any real property within this state.
(d) Contracting to insure any person, property, or risk located within this state at the time of contracting.
....
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
....
(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
[5] Section 33-36-9, Georgia Code Annotated (Michie 1990), states:

Coverage afforded by insolvent insurers to become obligation of pool; investigation and settlement of claims by pool.
In the event an insurer is determined to be insolvent, the coverage afforded by property and casualty insurance policies issued by such insurer shall, with respect to covered claims, become the obligation of the pool for a period of 30 days from the date of such determination or until policy expiration date if less than said 30 days or until the policy has been replaced by the insurer within said 30 days. The pool shall be deemed to be the insurer for such period with respect and to the extent of the claims with all the rights, duties, and obligations of the insolvent insurer; and the pool is authorized to investigate, adjust, compromise, and settle covered claims or to investigate, handle, and deny noncovered claims.
[6] GIIP's statutory provisions indicate that, upon a member insurer's insolvency, GIIP is appointed as the insurer's "agent with respect to investigation, adjustment, compromise, and settlement of covered claims." Ga. Code Ann. § 33-36-13 (Michie 1990). Jurisdiction over the principal (Allied), however, does not confer jurisdiction over the agent (GIIP). See Kennedy v. Reed, 533 So.2d 1200 (Fla. 2d DCA 1988).
[7] We choose not to follow the rationale in Olivier v. Merritt Dredging Co., 954 F.2d 1553 (11th Cir.1992), wherein the Eleventh Circuit recently reviewed a similar situation and held that the statutory insurance guaranty associations of two states could be hailed into the courts of another. Olivier, a Louisiana seaman who suffered injuries while aboard a vessel in Alabama, secured a judgment in Alabama against his employer, a South Carolina corporation. The employer was covered by an insurer that subsequently became insolvent. Olivier sought writs of garnishment against the Louisiana Insurance Guaranty Association (LIGA) and the South Carolina Property and Casualty Insurance Guaranty Association (SCIGA). After the district court granted the writs, LIGA and SCIGA appealed, claiming lack of minimum contacts. The Eleventh Circuit held "that the acts of guaranteeing insurance obligations within the state and of assuming the role of insurer are of such a nature that they justify the legal fiction that LIGA and SCIGA have consented to service of process and suit in Alabama." Id. at 1558. The court reasoned that the statutory obligations of both LIGA and SCIGA were sufficient to provide those entities with "fair warning that they could be subject to suit for `covered claims' in jurisdictions outside of their respective states." Id. An important factor in the court's reasoning was that a contrary holding would force Olivier to litigate in three different fora: Alabama, Louisiana, and South Carolina.
[8] Section 33-36-10, Georgia Code Annotated (Michie 1990), in whole states:

Recovery under chapter of covered claims recoverable under insolvency funds of other states.
(a) It is not the purpose of this chapter to provide or permit duplicate recoveries of covered claims under this chapter and an insolvency fund or its equivalent of any other state. In the construction and application of this chapter with respect to a covered claim which may be recoverable under this chapter and under an insolvency fund or its equivalent in another state, the sole recovery: (1) with respect to a workers' compensation claim, shall be under the insolvency fund or its equivalent of the state of residence of the claimant; (2) with respect to a first-party claim of an insured for damage to or destruction of property with a permanent location, shall be under the insolvency fund or its equivalent of the state where the property is permanently situated; and (3) with respect to any other covered claim, shall be under the insolvency fund or its equivalent of the state of residence of the insured.
(b) Any recovery obtained from the pool pursuant to this chapter shall be reduced by those amounts recovered in any other state from a similar or equivalent insolvency fund in such state when the recovery was obtained by the same claimant for the same claim filed against the pool in this state.
(Emphasis added.)