TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00353-CV







The Texas Property and Casualty Insurance Guaranty Association and Pennsylvania
Insurance Guaranty Association, Appellants


v.


The Boy Scouts of America; The Penn Mountains Council of the Boy Scouts of America; The
Forest Lake Council of the Boy Scouts of America; The Philadelphia Council of the Boy
Scouts of America; and The Valley Forge Council of the Boy Scouts of America, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. 455,061, HONORABLE JACK W. PRESCOTT, JUDGE PRESIDING





 This case arises out of claims brought against the Boy Scouts of America (the "Boy
Scouts") and several of its local councils in Pennsylvania (the "Pennsylvania councils"), (1) appellees. After
the Boy Scouts settled these claims, they sought indemnification from the Texas Property and Casualty
Insurance Guaranty Association ("Texas Guaranty"), and the Pennsylvania councils sought indemnification
from the Pennsylvania Insurance Guaranty Association ("Pennsylvania Guaranty"). The trial court granted
summary judgment in favor of the Boy Scouts and the Pennsylvania councils. Both Pennsylvania Guaranty
and Texas Guaranty appeal. We will reverse the trial court's summary judgment.


BACKGROUND


 The Boy Scouts is a corporation chartered by an act of Congress with its principal place
of business in Texas. The Pennsylvania councils are each independent corporations chartered by and doing
business in Pennsylvania. Boy Scouts operates a risk management program for itself and its more than four
hundred local councils throughout the United States, including the Pennsylvania councils. As part of this
risk management program, the Boy Scouts determines how much insurance is needed and how the
insurance should be structured. 

 In 1984 and 1985, the Boy Scouts purchased liability insurance policies from Mission
National Insurance Company ("Mission"). The 1984 policy afforded the Boy Scouts and its local councils
$5,000,000 per occurrence in coverage, subject to a $500,000 per occurrence self-insured retention. The
1985 policy afforded $1,000,000 of coverage per occurrence--also subject to a $500,000 per occurrence
self-insured retention. Mission was licensed to do business in both Texas and Pennsylvania and was a
participant in both states' insurance guaranty fund programs. Mission became insolvent and was placed
in liquidation in 1987.

 This case arises out of three negligence lawsuits filed against the Boy Scouts and the
Pennsylvania councils. Both the Boy Scouts and the Pennsylvania councils were named insureds under the
1984 and 1985 Mission policies; they contended, therefore, that these lawsuits were covered claims under
these policies. Because of Mission's insolvency, the Boy Scouts filed claims with Texas Guaranty on its
own behalf and with Pennsylvania Guaranty on behalf of the Pennsylvania councils. Both guaranty
associations rejected the claims.

 After Pennsylvania Guaranty and Texas Guaranty rejected the claims, the Boy Scouts paid
the costs of defending and settling the lawsuits. The Boy Scouts and the Pennsylvania councils then filed
this action against both Pennsylvania Guaranty and Texas Guaranty seeking damages and declaratory relief. 
All parties filed motions for summary judgment, and the trial court granted the Boy Scouts' and the
Pennsylvania councils' motions. The court awarded the Pennsylvania councils damages and attorney's fees
totaling $342,658.45 to be paid by Pennsylvania Guaranty. It also awarded the Boy Scouts damages and
attorney's fees totaling $126,500 to be paid by Texas Guaranty. Pennsylvania Guaranty and Texas
Guaranty now appeal, challenging the trial court's summary judgment.


DISCUSSION



Pennsylvania Guaranty's Appeal

 Upon being served with the Boy Scouts' complaint, Pennsylvania Guaranty filed a special
appearance objecting to the trial court's exercise of personal jurisdiction over Pennsylvania Guaranty. See
Tex. R. Civ. P. 120a. The trial court overruled the special appearance. Pennsylvania Guaranty now
challenges the trial court's summary judgment on the grounds that the court lacked in personam jurisdiction
over Pennsylvania Guaranty and therefore violated Pennsylvania Guaranty's constitutional right to due
process of law. See U.S. Const. amend. XIV.

 Pennsylvania Guaranty is a quasi-public entity established by the Pennsylvania legislature
to protect Pennsylvania residents from financial loss resulting from the insolvency of insurance carriers. See
40 Pa. Cons. Stat. §§ 1701.102(1), 1701.103(5)(a). (2) Because the Boy Scouts is not a Pennsylvania
resident, its claims against Mission are not covered claims under the Pennsylvania Guaranty Association
Act (the "Pennsylvania Act"). The Pennsylvania councils are, however, Pennsylvania residents and their
claims may be covered under the act. See id. § 1701.103(5)(a).

 Pennsylvania Guaranty argues that it has no contacts with the State of Texas and, therefore,
Texas courts are without jurisdiction to hear the dispute between Pennsylvania Guaranty and the
Pennsylvania councils. Texas's long-arm statute grants the state's courts personal jurisdiction over
nonresidents doing business in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1986). The
long-arm statute extends personal jurisdiction "as far as the federal constitutional requirements of due
process will allow." Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815
S.W.2d 223, 226 (Tex. 1991). The federal constitution protects a nonresident defendant's "liberty interest
in not being subject to the binding judgments of a forum with which [it] has established no meaningful
'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting
International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). Accordingly, we must determine
whether the federal constitution allows Texas courts to assert personal jurisdiction over Pennsylvania
Guaranty. See id.

 The Due Process Clause of the United States Constitution prohibits a state court from
exercising personal jurisdiction over a nonresident defendant unless the defendant "'purposefully established
"minimum contacts" in the forum state.'" Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108-09 (1987) (quoting Burger King Corp., 471 U.S. at 474). Even if the defendant has purposefully
established minimum contacts, the state may not exercise personal jurisdiction over the defendant if such
an exercise would offend "'traditional notions of fair play and substantial justice.'" International Shoe Co.
v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940));
accord Asahi Metal Indus., 480 U.S. at 113. 

 The Boy Scouts and the Pennsylvania councils contend that Pennsylvania Guaranty is
subject to the personal jurisdiction of Texas's courts. They argue that we need not look directly at
Pennsylvania Guaranty's contacts with Texas to determine whether such jurisdiction exists because
Pennsylvania Guaranty steps into Mission's shoes for the purposes of personal jurisdiction. 

 Under the Pennsylvania Act, all insurance companies writing property and casualty
insurance in Pennsylvania must be Pennsylvania Guaranty members. 40 Pa. Cons. Stat. § 1701.201(a). 
When a member insurance company becomes insolvent, Pennsylvania Guaranty is "deemed the insurer to
the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and
obligations of the insolvent insurer as if that insurer had not become insolvent." Id. § 1701.201(b)(1)(ii). 
Mission was a member of Pennsylvania Guaranty. Accordingly, upon Mission's insolvency, Pennsylvania
Guaranty was deemed to be Mission to the extent of Pennsylvania Guaranty's obligation on the claims of
the Boy Scouts and the Pennsylvania councils. See id. The Boy Scouts and the Pennsylvania councils
contend that the Pennsylvania Act means that, for purposes of personal jurisdiction, Pennsylvania Guaranty
steps into the shoes of an insolvent member insurance company. By this argument, if an insolvent insurer
is subject to the jurisdiction of a particular state, Pennsylvania Guaranty should also be subject to that
state's personal jurisdiction. Accordingly, the Boy Scouts and the Pennsylvania councils argue that,
because Mission was subject to Texas's jurisdiction, the trial court had personal jurisdiction over
Pennsylvania Guaranty in this action.

 Pennsylvania Guaranty disputes this interpretation of the Pennsylvania Act. It argues that
the act does not automatically subject Pennsylvania Guaranty to personal jurisdiction in another state. 
Instead, it argues that we must perform a minimum contacts analysis to determine whether Pennsylvania
Guaranty itself purposefully established sufficient contacts with the State of Texas to be subject to the
state's jurisdiction. Whether Texas courts have jurisdiction over another state's insurance guaranty
association is a question of first impression.


Does Pennsylvania Guaranty Stand in Mission's Shoes?

 We must first determine whether Pennsylvania Guaranty "stands in the shoes" of Mission
for the purpose of in personam jurisdiction. Only five other jurisdictions have addressed this issue. Of
these five jurisdictions, three determined that the forum state had personal jurisdiction over another state's
guaranty association. In only one of these three cases, however, did a court decide that the forum state
had jurisdiction solely on the basis of a statute deeming the nonresident guaranty association to be the
insolvent insurer. See Bell v. Senn Trucking Co., 418 S.E.2d 310, 312 (S.C. 1992) (holding that, under
the plain language of the statute, "once [the insurer] became insolvent, the [guaranty association] became
subject to the jurisdiction of the courts of [the forum s]tate as [the insurer's] alter-ego and agent"). 

 In the two remaining cases in which courts held another state's guaranty association subject
to the forum state's personal jurisdiction, the courts did so only after performing some type of minimum
contacts analysis. See Olivier v. Merritt Dredging Co., 979 F.2d 827 (11th Cir. 1992); Ruetgers-Nease
Chem. Co. v. Firemen's Ins., 566 A.2d 227 (N.J. Super. Ct. App. Div. 1989). Both cases involved
statutory language similar to the Pennsylvania Act--i.e., the nonresident guaranty association was deemed
the insolvent insurer. See Olivier, 979 F.2d at 831; Ruetgers-Nease Chem. Co., 566 A.2d at 228. The
courts refused, however, to use this language as the sole basis for exercising personal jurisdiction over the
guaranty associations. Instead, the courts recognized that "the touchstone of jurisdiction . . . is . . . whether
the defendant has at least minimum contacts with the forum such that the acceptance of jurisdiction does
not offend traditional notions of fair play and substantial justice." Ruetgers-Nease Chem. Co., 566 A.2d.
at 229; see Olivier, 979 F.2d at 830-31. Accordingly, each court performed some kind of minimum
contacts analysis in reaching its conclusion that the guaranty association was subject to personal jurisdiction
in the forum state. See Olivier, 979 F.2d at 831-34; Ruetgers-Nease Chem. Co., 566 A.2d at 229.

 In contrast, both the Florida Supreme Court and a California appellate court have held that
a nonresident guaranty association was not subject to the forum state's personal jurisdiction. See
Pennsylvania Life & Health Ins. Guar. Ass'n v. Superior Court, 27 Cal. Rptr. 2d 507 (Cal. Ct. App.
1994); Georgia Insurers Insolvency Pool v. Brewer, 602 So. 2d 1264 (Fla. 1992). These courts
rejected the argument that, because a statute deems the guaranty association to be the insolvent insurer,
the guaranty association is automatically subject to the personal jurisdiction of any state having jurisdiction
over the insolvent insurer. Both the Florida and California courts recognized that a guaranty association
stands in the shoes of an insolvent insurer for some purposes; however, they noted that a guaranty
association's liability is strictly limited to statutorily defined, covered claims. See Pennsylvania Life &
Health Ins. Guar. Ass'n, 27 Cal. Rptr. 2d at 513; Georgia Insurers Insolvency Pool, 602 So. 2d at
1267. Thus, both courts reasoned, the obligations of a guaranty association "are not necessarily
coextensive with the insolvent insurer." Pennsylvania Life & Health Ins. Guar. Ass'n, 27 Cal. Rptr. 2d
at 513; see also Georgia Insurers Insolvency Pool, 602 So. 2d at 1267. The courts concluded that the
statutory obligations of a guaranty association "are substantive obligations of supplying limited amounts of
insurance under limited circumstances" and do not amount to a guaranty association's consent to another
state's personal jurisdiction. Georgia Insurers Insolvency Pool, 602 So. 2d at 1267; see also
Pennsylvania Life & Health Ins. Guar. Ass'n, 27 Cal. Rptr. 2d at 513. Accordingly, both courts
performed jurisdictional analysis to determine whether the guaranty association itself had purposefully
established minimum contacts with the forum state. Georgia Insurers Insolvency Pool, 602 So. 2d at
1268-69; see also Pennsylvania Life & Health Ins. Guar. Ass'n, 27 Cal. Rptr. 2d at 510-14.

 Like the Florida and California courts, we do not believe that a guaranty association stands
in the shoes of an insolvent insurer for the purpose of personal jurisdiction. The Due Process Clause of the
United States Constitution protects Pennsylvania Guaranty's liberty interest in not being subject to the
jurisdiction of Texas's courts unless, by its own purposeful actions, it has established sufficient contacts with
Texas. See Burger King, 471 U.S. at 471-72. Accordingly, unless Pennsylvania Guaranty consented to
Texas's jurisdiction, we must determine whether Pennsylvania Guaranty's actions establish some basis for
Texas courts to exercise jurisdiction over it. We hold that the wording of the Pennsylvania Act does not
amount to such consent. When one of Pennsylvania Guaranty's member-insurers becomes insolvent,
Pennsylvania Guaranty does not assume all of the insurer's obligations. Instead, it assumes the insurer's
obligations only on those statutorily defined "covered claims." See 40 Pa. Cons. Stat. § 1701.103(5)
(defining covered claims). Even within the context of a covered claim, Pennsylvania Guaranty assumes an
insolvent insurer's obligations only to the extent that those obligations do not exceed $300,000. Id.
§ 1701.201(b)(1)(i). Furthermore, the Pennsylvania Act deems Pennsylvania Guaranty the insolvent
insurer only to the extent of its obligation on a covered claim. Id. § 1701.201(b)(1)(ii). It is therefore
apparent from the act's plain language that Pennsylvania Guaranty stands in the shoes of an insolvent insurer
for limited purposes--i.e., Pennsylvania Guaranty assumes only certain substantive obligations of the
insolvent insurer. Given this language, we cannot say that the Pennsylvania legislature intended to subject
Pennsylvania Guaranty to the personal jurisdiction of any state in which an insolvent member-insurer sold
insurance.

 Additionally, subjecting guaranty associations like Pennsylvania Guaranty to the possibility
of suits in numerous jurisdictions appears to contravene the state's public purpose for establishing guaranty
associations. Guaranty associations, having undertaken the expense of defending themselves in multiple
jurisdictions, could be impeded from protecting local citizens from the insolvency of their insurers. See
Georgia Insurers Insolvency Pool, 602 So. 2d at 1269. We therefore hold that Pennsylvania Guaranty
does not stand in Mission's shoes for the purposes of personal jurisdiction; instead, there must be an
independent basis for Texas's assertion of jurisdiction over Pennsylvania Guaranty.


Minimum Contacts

 Accordingly, we must determine whether Pennsylvania Guaranty has purposefully
established sufficient minimum contacts with Texas to be subject to the personal jurisdiction of the state's
courts. Only if we determine that such contacts exist need we determine whether Texas's exercise of
personal jurisdiction would offend notions of fair play and substantial justice.

 Minimum contacts cannot be established unilaterally by those claiming a relationship with
the nonresident defendant. Rather, it is essential that the defendant act to purposefully avail itself "of the
privilege of conducting activities within the forum State, thus invoking the benefits and protections of its
laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Accordingly, a state's courts cannot exercise
personal jurisdiction over a nonresident defendant solely on the basis of "'random,' 'fortuitous,' or
'attenuated' contacts," or on the unilateral actions of others. Burger King, 471 U.S. at 475. A state court
can properly exercise jurisdiction, however, when a defendant's actions, purposefully directed toward the
forum state, proximately result in contacts creating a "substantial connection" between the defendant and
the forum state. Id.; see also Asahi Metal Indus., 480 U.S. at 109, 112.

 "Foreseeability" can be a factor in determining whether the defendant has established a
substantial connection between itself and the forum state. Asahi Metal Indus., 480 U.S. at 109-112;
Guardian Royal Exch., 815 S.W.2d at 227. Foreseeability alone, however, is not a sufficient basis for
jurisdiction under the Due Process Clause. Asahi Metal Indus., 480 U.S. at 109. As noted above, the
unilateral actions of another, no matter how foreseeable, cannot subject a nonresident defendant to the
personal jurisdiction of the forum state. When, however, a nonresident defendant's "conduct and
connection with the forum State are such that [the defendant] should reasonably anticipate being haled into
court there," the defendant is placed on notice that it is subject to the state's jurisdiction and the
requirements of the Due Process Clause are satisfied. World-Wide Volkswagen Corp. v. Woodson, 444
U.S. 286, 297 (1980).

 In asserting personal jurisdiction over a nonresident defendant, a state's courts may
exercise either specific or general jurisdiction. The state exercises specific jurisdiction over a defendant
when the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum." 
Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n.8 (1984). In determining
whether a court may constitutionally exercise specific jurisdiction over a nonresident defendant, the court
must focus on the relationship between the defendant, the forum state, and the litigation. Id. at 414. If,
however, the controversy does not relate to or arise out of a defendant's contacts with the state, a state's
court may exercise general jurisdiction over the defendant when its contacts with the state are "continuous
and systematic." Id. at 414-416 & n.9.

 We will first, therefore, examine the relationship between Pennsylvania Guaranty, this
lawsuit, and the State of Texas to determine whether Pennsylvania Guaranty purposefully established
sufficient minimum contacts to allow the trial court to exercise specific jurisdiction over Pennsylvania
Guaranty. As noted above, Pennsylvania Guaranty is a quasi-public entity established by Pennsylvania to
mitigate the losses of state residents having claims against insolvent insurers. As such, Pennsylvania
Guaranty supplies limited amounts of insurance under limited circumstances; it is not, however, in the
business of selling insurance--it has not entered into insurance contracts, transacted business, or maintained
offices in Texas. Pennsylvania Guaranty is a creature of statute, created by the Pennsylvania legislature to
protect Pennsylvania residents and property. From the record, it is clear that Pennsylvania Guaranty itself
established no contacts with Texas.

 Although it was foreseeable to Pennsylvania Guaranty that its member-insurers would
contract to provide insurance in Texas, such foreseeability is not enough to subject Pennsylvania Guaranty
to personal jurisdiction in Texas. See World-Wide Volkswagen Corp., 444 U.S. at 295-297. Instead,
we must determine whether Pennsylvania Guaranty, through its "conduct and connections" with Texas,
should have reasonably anticipated being haled into court here. See id. at 297. As noted above,
Pennsylvania Guaranty has no contacts with Texas; therefore it had no conduct and connections with Texas
from which it could reasonably anticipate being subjected to Texas's jurisdiction.

 Furthermore, the relationship between this lawsuit and Texas is tenuous at best. (3) This
lawsuit, as it relates to Pennsylvania Guaranty, involves the question of whether the Pennsylvania councils
have covered claims against Pennsylvania Guaranty. The Pennsylvania councils, plaintiffs in this lawsuit,
are residents of Pennsylvania. The underlying negligence claims against the Pennsylvania councils--i.e.,
the claims that the Pennsylvania councils argue are covered claims--arose out of acts occurring in
Pennsylvania. Deciding whether these claims constitute "covered claims" under the Pennsylvania Act
involves applying Pennsylvania law. The only relationship between this lawsuit and Texas arises out of the
Boy Scouts' role as risk manager for the Pennsylvania councils. The Boy Scouts is a Texas resident and,
as such, does not have a covered claim against Pennsylvania Guaranty. The State of Texas has an interest
in ensuring that state residents, like the Boy Scouts, are fairly protected from the risk of an insurance
company becoming insolvent; however, Texas residents receive such protection from the Texas Property
and Casualty Insurance Guaranty Association. Accordingly, Texas's interest in the lawsuit against
Pennsylvania Guaranty is minimal.

 From the record, we conclude that Pennsylvania Guaranty itself took no action to
purposefully establish "minimum contacts" with Texas. Thus, there is no "substantial connection" between
Pennsylvania Guaranty and Texas, and this lawsuit does not arise out of Pennsylvania Guaranty's contacts
with Texas. We therefore hold that Pennsylvania Guaranty is not subject to the state's specific jurisdiction. 
See Guardian Royal Exch. Assurance, 815 S.W.2d at 230. Additionally, Pennsylvania Guaranty does
not have the continuous and systematic contacts with the state necessary to subject it to the general
jurisdiction of Texas courts. See id. Accordingly, we sustain Pennsylvania Guaranty's first point of error. 
Because Texas courts lack jurisdiction over Pennsylvania Guaranty, we need not address its remaining
points of error.



Texas Guaranty's Appeal


 Texas Guaranty's appeal involves a negligence claim brought by James Post and his parents
(the "Post claim") against the Boy Scouts and the Penn Mountains Council. (4) The Post claim alleged that
James Post, while attending a scout camp in Pennsylvania, suffered injuries that rendered him a
quadriplegic. The Post complaint alleged that these injuries were caused by the negligence of the Boy
Scouts and/or the Penn Mountains Council, and sought damages in excess of thirty million dollars.

 Because of Mission's insolvency, the Boy Scouts notified Texas Guaranty of the Post claim;
however, Texas Guaranty rejected the claim. (5) To protect itself and the Penn Mountains Council, the Boy
Scouts entered into settlement negotiations with the Posts and eventually settled the Post claim for
$4,750,000. The Boy Scouts paid a total of $1,500,000 of this settlement; this amount constituted the Boy
Scouts' $500,000 per occurrence self-insured retention and Mission's $1,000,000 per occurrence
obligation. (6) The Boy Scouts then filed suit against Texas Guaranty alleging that the Post claim was a
covered claim under the Texas Property and Casualty Insurance Guaranty Act (the "Texas Act") and that
it was therefore entitled to recovery from Texas Guaranty under the Texas Act for the settlement of that
claim. The trial court granted the Boy Scouts' motion for summary judgment and awarded it $126,500. (7) 
Texas Guaranty appeals, contending that (1) the Boy Scouts was not obligated to pay the Post claim
because it voluntarily paid the settlement, and that (2) there is a fact question as to whether the Boy Scouts
settled the Post claim in good faith and as to whether the settlement is reasonable in amount. Texas
Guaranty also argues the trial court erred by awarding the Boy Scouts attorney's fees and post-judgment
interest.

 We review the trial court's summary judgment de novo. We must determine whether the
Boy Scouts met its burden of showing that no genuine issue of material fact exists and that it is entitled to
judgment as a matter of law. We will accept as true all evidence favorable to Texas Guaranty and indulge
every reasonable inference and resolve every doubt in its favor. See Nixon v. Mr. Property Mgt. Co.,
690 S.W.2d 546, 548-49 (Tex. 1985).


Obligation to Pay/Voluntary Settlement

 In its first point of error, Texas Guaranty contends the trial court erred by failing to grant
its motion for summary judgment because the summary-judgment evidence establishes that the Boy Scouts
was not "legally obligated" to pay the Post claim or in the alternative that the Boy Scouts paid the
$4,750,000 settlement as a volunteer. Texas Guaranty argues therefore that, under the 1985 Mission
policy, it was not obligated to pay the Boy Scouts for the Post settlement and that the trial court erred in
denying Texas Guaranty's motion for summary judgment.

 To make its argument, Texas Guaranty relies on language in the 1985 Mission insurance
policy stating that Mission agreed to "pay on behalf of the [Boy Scouts] all sums which the [Boy Scouts]
shall become legally obligated to pay as damages on account of . . . personal injuries . . . ." (Emphasis
added.) By statute, Texas Guaranty assumes the policy obligations of Mission to the extent that those
obligations are "covered claims." See Tex. Ins. Code Ann. art. 21.28-C, § 8 (West Supp. 1997). (8) Texas
Guaranty argues that it is not obligated to pay any amount for the Post claim unless the Boy Scouts can
prove that the Boy Scouts itself was legally obligated to pay the settlement of the Post claim. Texas
Guaranty notes that the Boy Scouts and Penn Mountains Council are separate legal entities and that the
injury underlying the Post claim occurred on property owned, maintained, and operated by the Penn
Mountains Council. Therefore, Texas Guaranty contends that the Penn Mountains Council, and not the
Boy Scouts, was legally obligated to pay the Post claim. Texas Guaranty also relies on an admission made
by the Boy Scouts in discovery that the Boy Scouts was not legally obligated to pay the Post claim. 

 What Texas Guaranty fails to recognize, however, is that a court judgment is not the only
manner by which the Boy Scouts could become legally obligated to pay the Post claim. A legal obligation
can also arise out of a contract, such as a settlement. Therefore, Mission was "legally obligated" to
indemnify the Boy Scouts for covered claims, whether the legal obligation was fixed by judgment or by
settlement contract. See Willcox v. American Home Assurance Co., 900 F. Supp. 850, 856 (S.D. Tex.
1995). Indeed, the Mission policy expressly recognized that Mission had an obligation to indemnify the
Boy Scouts for its settlements of covered claims. Under the policy, Mission was responsible for
indemnifying the Boy Scouts to the extent of the Boy Scouts' "ultimate net loss" in excess of the underlying
self-insured retention. The policy defines "ultimate net loss" as "the total sum which the [Boy Scouts]
become[s] obligated to pay by reason of personal injuries . . . either through adjudication or compromise." 
(Emphasis added.)

 Furthermore, the Boy Scouts' admission that it was not legally obligated to pay the Post
claim does not establish that the Post settlement was not a covered claim under the Mission policy. This
admission merely reflects that the Post claim never resulted in an adjudication on the merits. In settling the
Post claim, the Boy Scouts, as is customary, did not admit liability for the injuries James Post suffered. The
Boy Scouts' admission that it was not legally obligated to pay the Post claim is therefore consistent with
its compromise and settlement of the Post claim.

 Texas Guaranty's obligations to the Boy Scouts are defined by statute: Texas Guaranty
assumes Mission's obligations to the extent that they are "covered claims" as defined by the Texas Act. 
Tex. Ins. Code Ann. art. 21.28-C, § 8(b) (West Supp. 1997). That act defines "covered claim" in
pertinent part as "an unpaid claim of an insured . . . that arises out of and is within the coverage and not in
excess of the applicable limits of an insurance policy to which this act applies. Id. § 5(8). As noted above,
settlements are expressly within the coverage of the Mission policy. The Boy Scouts was a named
defendant in the underlying lawsuit and its settlement of the Post claim is therefore covered under the
Mission policy. Accordingly, we hold that the summary-judgment evidence does not establish as a matter
of law that the Boy Scouts was not legally obligated to pay the Post claim. To the contrary, the evidence
establishes that the Boy Scouts was legally obligated to pay the settlement and that the settlement was
within the coverage of the Mission policy.

 The flip side of Texas Guaranty's argument that Boy Scouts was not legally obligated to
pay the Post claim is that the Boy Scouts paid the claim as a volunteer. Texas Guaranty contends that, even
if settlements are covered under the terms of the Mission policy, this particular settlement is not covered
because only the Penn Mountains Council, and not the Boy Scouts, could be held liable for James Post's
injuries. Texas Guaranty argues therefore that the Boy Scouts paid the Post settlement as a volunteer on
behalf of the Penn Mountains Council.

 Texas Guaranty relies on Golden Spread Council, Inc. v. Akins, 926 S.W.2d 287 (Tex.
1996), for the proposition that the Boy Scouts could not have been held liable for James Post's injuries. 
In Golden Spread, the Boy Scouts took the position that it was not negligent and could not be held liable
for the negligence of one of its local councils. The Texas Supreme Court agreed, holding that (1) given
the facts of the case the Boy Scouts itself owed no duty to the plaintiff and (2) the Boy Scouts could not
be vicariously liable for the negligence of one of its local councils under a respondeat superior theory. 
Id. at 290. 

 This case, however, is clearly distinguishable from Golden Spread. The petition in the Post
claim named the Boy Scouts as a defendant, alleging that both the Boy Scouts and the Penn Mountains
Council were jointly and severally liable for James Post's injuries. Because the Post claim was never tried
on the merits, we cannot evaluate all of the factual bases for allegations of independent responsibility of the
Boy Scouts. However, we cannot say as a matter of law that the Boy Scouts could not have been
independently liable for the Post claim. Accordingly, by settling the case, the Boy Scouts was shielding
itself as well as the Penn Mountains Council from potential damages. We conclude that the Boy Scouts
did not settle the Post claim as a mere volunteer. We hold that the trial court did not err by denying Texas
Guaranty's motion for summary judgment. We overrule Texas Guaranty's first point of error.


Reasonableness of Settlement

 In its second point of error, Texas Guaranty argues that the trial court erred in granting the
Boy Scouts' motion for summary judgment because a question of material fact exists as to whether the Boy
Scouts settled the Post claim in good faith and for a reasonable amount. Under the Texas Act, Texas
Guaranty is not bound by any settlement entered into by the insured of an insolvent member insurance
company. Tex. Ins. Code Ann. art. 21.28-C, § 8(d) (West Supp. 1997). Instead, Texas Guaranty may
review such settlements to determine the extent to which they may be contested. Id. When an insured
settles a claim without the consent of the insurer, the insured must show, at a minimum, that the settlement
was made in good faith, upon a reasonable basis, and for a reasonable amount. See Texas United Ins.
Co. v. Burt Ford Enters., Inc., 703 S.W.2d 828, 835 (Tex. App.--Tyler 1986, no writ) (holding that,
if a liability insurer wrongfully refuses to defend a suit filed against its insured and the insured enters into a
settlement without the sanction of a judgment, the insured may recover for the settlement upon proof of
facts establishing that the settlement was made in good faith, upon a reasonable basis, and for a reasonable
amount); see also Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co., 490 S.W.2d 818, 824
(Tex. 1972), overruled on other grounds by Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708
(Tex. 1987); Safeco Ins. Co. of Am. v. Gaubert, 829 S.W.2d 274, 280-81 (Tex. App.--Dallas 1992,
writ denied) (a settling indemnitee can recover from his indemnitor upon proof of his "potential liability" as
well as the reasonableness of the settlement between himself and the third party). Because Texas Guaranty
has the authority to review settlements made by an insured, it argues that it may contest the good faith and
reasonableness of the Post-claim settlement. We agree that the good faith and reasonableness of the Post-claim settlement are the ultimate and controlling issues in this lawsuit.

 The Boy Scouts argues that, because Texas Guaranty denied its claim, Texas Guaranty
cannot challenge the reasonableness of the Post-claim settlement. In support of this contention, the Boy
Scouts cites Employers Casualty Co. v. Block, 744 S.W.2d 940 (Tex. 1988), a case suggesting that,
when an insurer wrongfully declines to defend a claim, the insurer cannot collaterally attack the
reasonableness of an agreed judgment resulting from a settlement. Id. at 943. Employers Casualty Co.
did not involve a guaranty association and is distinguishable from this case. Moreover, the supreme court
has recently disapproved of this suggestion in State Farm Fire & Casualty Co. v. Gandy, 925 S.W.2d
696, 714 (Tex. 1996).

 In Employers Casualty Co., the insurer had a duty to defend covered claims, was notified
of the claim asserted against the insured, and declined to defend the claim. Id. at 942-43. Therefore, the
insurer was not a stranger to the agreed judgment and could only attack that judgment collaterally. See
Ranger Ins. Co. v. Rogers, 530 S.W.2d 162, 167 (Tex. Civ. App.--Austin 1975, writ ref'd n.r.e.). 

 In this case Mission, and therefore Texas Guaranty, had no duty to defend claims against
the Boy Scouts. Furthermore, by statute, Texas Guaranty is not bound by any settlement entered into by
the Boy Scouts. See Tex. Ins. Code Ann. art. 21.28-C, § 8(d) (West Supp. 1997). Indeed, under the
Texas Act, Texas Guaranty is charged with reviewing the Boy Scouts' settlement of the Post claim and
determining whether and to what extent it can be challenged. No such statute was in issue in Employers
Casualty Co. Therefore, we conclude that Texas Guaranty can challenge the reasonableness of this
settlement.

 The Boy Scouts contends there is summary-judgment evidence establishing it entered into
the Post settlement in good faith and for a reasonable amount. Among such evidence, the Boy Scouts notes
that: (1) the complaint in the Post claim alleged that the Boy Scouts' negligence caused James Post's
injuries; (2) James Post's injuries rendered him quadriplegic; and (3) the complaint in the Post claim sought
damages in excess of thirty million dollars. We agree with the Boy Scouts that these facts constitute
evidence from which a fact-finder could conclude that the Boy Scouts made the settlement in good faith,
upon a reasonable basis, and for a reasonable amount. However, although this evidence appears to be
uncontested, it does nothing more than create a fact issue. 

 Additionally, there is summary-judgment evidence that could support a fact-finding that the
Post-claim settlement was unreasonable. Texas Guaranty points to the evidence that the Penn Mountains
Council was a party to the Post-claim litigation and that the Penn Mountains Council alone owned and
operated the scout camp at which James Post was injured. Given these facts, Texas Guaranty contends
that the Penn Mountains Council should at least have been liable for some, if not all, the damages awarded
in the Post-claim litigation. Therefore, Texas Guaranty asserts that it was unreasonable for the Boy Scouts
to pay one hundred percent of the Post-claim settlement.

 Because this question of good faith and reasonableness reaches us on summary judgment,
we must accept as true all evidence favorable to Texas Guaranty. See Nixon, 690 S.W.2d. at 548-49. 
Reviewing the above summary-judgment evidence, we hold that a material fact issue exists as to whether
the Boy Scouts entered into the Post-claim settlement in good faith, and whether the settlement was
reasonable in amount. Accordingly, Texas Guaranty is entitled a jury trial on these narrow issues. See
Brodhead v. Dodgin, 824 S.W.2d 616, 622 (Tex. App.--Austin 1991, writ denied). We sustain Texas
Guaranty's second point of error.

 Since the trial court's summary judgment must be reversed for a trial on the merits, we need
not determine whether the trial court erred in granting the Boy Scouts judgment for attorney's fees and
post-judgment interest.




CONCLUSION


 Because the trial court was without personal jurisdiction over Pennsylvania Guaranty, we
reverse the trial court's summary judgment in favor of the Pennsylvania councils. We remand the cause
as it relates to Pennsylvania Guaranty and the Pennsylvania councils to the trial court for entry of a
dismissal. Because questions of material fact exist as to whether the Post-claim settlement was entered into
in good faith and was reasonable in amount, we also reverse the trial court's summary judgment in favor
of the Boy Scouts. We remand the cause as it relates to Texas Guaranty and the Boy Scouts to the trial
court for a trial on the merits.



 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Kidd, and B. A. Smith

Reversed and Remanded

Filed: June 12, 1997

Publish
1. The Forest Lake Council, the Valley Forge Council, the Philadelphia Council, and the Penn
Mountains Council are all local councils of the Boy Scouts of America located in Pennsylvania. Collectively
they will be referred to as the "Pennsylvania councils."
2. The Texas Property and Casualty Insurance Guaranty Act provides similar protection for Texas
residents. See Tex. Ins. Code Ann. art. 21.28-C, §§ 2, 5(8) (West Supp. 1997).
3. The State of Texas's interest in the litigation cannot by itself subject a nonresident defendant to
the jurisdiction of the state's courts; however, such an interest may establish jurisdiction "upon a lesser
showing of minimum contacts than would otherwise be required. Guardian Royal Exch. Assurance, 815
S.W.2d at 229.
4. The Texas Property and Casualty Insurance Guaranty Act, like the Pennsylvania Act, protects
state residents with "covered claims" from the risk of their insurer becoming insolvent. See Tex. Ins. Code
Ann. art 21.28-C, §§ 2, 5(8) (West Supp. 1997). Because the Penn Mountains Council is not a Texas
resident, it is not a part of this appeal as it relates to Texas Guaranty.
5. The Boy Scouts originally filed this claim with Mission's receiver. Pursuant to Act of June 17,
1993, 73d Leg., R.S., ch. 685, § 9.23, 1993 Tex. Gen. Laws 2559, 2638, Texas Guaranty has assumed
the receiver's responsibilities. Therefore all references will be to Texas Guaranty.
6. The balance of the settlement was paid by other excess insurance carriers.
7. The Texas Act limits the recovery to $100,000. Tex. Ins. Code Ann. art. 21.28-C, § 5(8)
(West Supp. 1997). The balance of $26,500 constitutes attorney's fees.
8. Although this case was filed in the trial court in 1989 and the Boy Scouts first moved for summary
judgment in 1990, we cite to the current statute for convenience.



 the scout camp at which James Post was injured. Given these facts, Texas Guaranty contends
that the Penn Mountains Council should at least have been liable for some, if not all, the damages awarded
in the Post-claim litigation. Therefore, Texas Guaranty asserts that it was unreasonable for the Boy Scouts
to pay one hundred percent of the Post-claim settlement.

 Because this question of good faith and reasonableness reaches us on summary judgment,
we must accept as true all evidence favorable to Texas Guaranty. See Nixon, 690 S.W.2d. at 548-49. 
Reviewing the above summary-judgme