Sherman J. OLIVIER, Plaintiff–Appellant,

v.

MERRITT DREDGING COMPANY, INC., et al., Defendants,

Louisiana Insurance Guaranty Association; South Carolina Property and Casualty Insurance Guaranty Association, Defendants–Appellees.

No. 91–7078.

United States Court of Appeals, Eleventh Circuit.

Dec. 21, 1992.

G. Hamp Uzzellee, III, Brian P. McCarthy, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for plaintiff-appellant.

Patrick H. Sims, Cabniss & Johnston, Mobile, Ala., for Louisiana Ins. Guar. Ass'n.

Gregory C. Buffalow, Robert S. Frost, Johnston, Adams, Bailey, Gordon & Harris, Mobile, Ala., for South Carolina Property and Cas. Ins. Guar. Ass'n.

## ON PETITION FOR REHEARING AND SUGGESTION OF REHEARING EN BANC

Before JOHNSON *, CLARK and PECK **, Senior Circuit Judges.

JOHN W. PECK, Senior Circuit Judge:

Our previous opinion in this case appearing in 954 F.2d 1553 (March 6, 1992), is vacated and withdrawn. The petitions for rehearing and for rehearing en banc are DENIED. The panel, having been request-

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

ed by a member of the court in regular active service to reconsider the opinion, has done so and reissues our modified opinion reversing the decision of the district court. No judge on active service has requested that the court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35–5).

Sherman J. Olivier, a resident of Louisiana and a seaman injured aboard a vessel in Alabama, appeals the dismissal of writs of garnishment issued to the Louisiana Insurance Guaranty Association [LIGA] and the South Carolina Property and Casualty Insurance Guaranty Association [SCIGA]. The district court in Alabama dismissed the writs on the ground that the court lacked personal jurisdiction over the garnishees. The court held that LIGA and SCIGA did not have sufficient minimum contacts with Alabama in order to be subject to personal jurisdiction within the state. We find under the interstate arrangements made by the insurance industry to protect policyholders from losses resulting from the insolvency of an industry member, LIGA and SCIGA consented to be subject to the same personal jurisdiction as one of their insolvent members, and we believe that judicial economy would best be served by keeping this litigation within that forum. Therefore, we reverse the district court's order.

## I. FACTS

On August 1, 1983 Sherman J. Olivier sustained personal injuries while employed by the Merritt Dredging Company [Merritt] as a sailor aboard a vessel in Alabama on the Alabama River. At the time of his injuries, Olivier was a resident of Louisiana. Merritt was a South Carolina corporation with its principal place of business in South Carolina.

On March 30, 1984 Merritt filed for bankruptcy in South Carolina. In order to protect the bankruptcy estate, the bankruptcy court temporarily stayed the personal injury suit Olivier had brought against Merritt in Alabama. The bankruptcy court lifted its stay on September 26, 1985.

To provide insurance for its various operations including its activity in Alabama,

Merritt contracted with the Midland Insurance Company [Midland]. Like Merritt, Midland faced financial difficulties. On April 3, 1986 Midland, a New York corporation, was liquidated pursuant to an order of the Supreme Court of New York. The liquidation proceedings once again stayed Olivier's personal injury suit against Merritt.

The second stay was lifted on May 22, 1987. In December 1988 a jury in Mobile, Alabama awarded Olivier $507,340.00. On February 14, 1989 Olivier received a judgment against Merritt of $522,190.00, interest from the date of the judgment, and costs.

Due to the insolvency of both Merritt and its insurer, Midland, Olivier requested that the district court in Alabama issue writs of garnishment to LIGA, SCIGA, and the Alabama Insurance Guaranty Association [AIGA]. On July 21, 1989 the district court issued the writs.

AIGA, LIGA, and SCIGA are unincorporated associations created by state statutes. *See* Ala.Code §§ 27–42–1 *et seq.* (1975). La.Rev.Stat.Ann. §§ 22:1375 *et seq.* (West Supp.1991), S.C.Code Ann. §§ 38–31–10 *et seq.* (Law.Co-op.1976). The AIGA writ is not at issue in this appeal. Insurance guaranty associations were formed by members of the insurance industry to avoid federal legislation that would have created a federal guaranty fund.

In 1966, Senator Thomas Dodd (D.Conn.) focused public attention on the problems created by a growing number of insurance company insolvencies. He released a study on the insolvencies of substandard automobile insurance companies, and introduced Senate Bill 3919 (the 'Dodd Bill') to establish a Federal Motor Vehicle Insurance Guaranty Corporation. The Dodd Bill was designed to protect automobile insurance policyholders and claimants in a manner similar to the protection afforded bank depositors by the Federal Deposit Insurance Corporation. 112 Cong.Rec. 27311 (1966).

\* \* \* \* \* \*

The insurance industry had been historically opposed to the guaranty fund concept. In an effort, however, to avoid federal legislation and the intrusion of the federal government into regulation for solvency, the NAIC swiftly drafted and adopted a model post-insolvency assessment fund bill (the 'Model Act') providing for individual state guaranty funds. The Model Act covered all insurance lines, except life, accident, health, title, credit and mortgage guaranty insurance. While the NAIC and virtually the entire property and casualty industry joined in advocating the passage of this defensive legislation, the American Insurance Association and the State Farm Companies did not initially lend their support for a state-by-state enactment of guaranty fund protection. The American Insurance Association, however, later helped draft the NAIC Model Act.

The Magnusson Bill [a substitute for the 'Dodd Bill'] died in the face of the NAIC Model Act, and variations of the Model Act were adopted in all states. Currently, post-insolvency assessment Insurance Guaranty Funds for property and liability insurance exist in Puerto Rico, the Virgin Islands, the District of Columbia, and every state except New York (New York has had a form of pre-insolvency assessment Insurance Guaranty Fund since 1947).[1]

The Insurance Guaranty Fund law does not establish a special private corporation. Rather, an Insurance Guaranty Fund is a public or quasi-public corporation. It is a legislatively declared "mechanism" to aid and benefit numerous citizens who have suffered losses due to the insolvency of their insurers. It fills a public need without profit to any organizers or stockholders. *O'Malley v. Florida Insurance Guaranty Association, et al.,* 257 So.2d 9, 11 (Fla.1971). The statutory purpose of the Insurance Guaranty Fund law is to place claimants in the same position they would have been in if the insurer had not become insolvent. *Lucas v. Illinois Insurance Guaranty Fund,* 52 Ill.App.3d 237,

10 Ill.Dec. 81, 83, 367 N.E.2d 469, 471 (1978).

## II. DISCUSSION

### A. *Alabama Long–Arm Jurisdiction*

This circuit conducts *de novo* review of a district court's dismissal of an action for lack of personal jurisdiction. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990). We begin our inquiry into whether the district court properly refused to assert personal jurisdiction with a two-part analysis. First, we consider whether the district court could obtain personal jurisdiction over the defendants pursuant to the applicable state long-arm statute. Second, we consider whether the exercise of personal jurisdiction would violate the due process clause of the Fourteenth Amendment to the United States Constitution.

In interpreting the reach of the state's long-arm statute, the Supreme Court of Alabama has extended the jurisdiction of Alabama courts to the extent permissible under the due process clause of the Fourteenth Amendment. *See Alabama Waterproofing Co., Inc. v. Hanby,* 431 So.2d 141, 145 (Ala.1983); *Sells v. International Harvester Co., Inc.,* 513 F.2d 762 (5th Cir.1975). Thus, in order to determine whether the district court in Alabama properly refused to exercise personal jurisdiction, we need only consider whether the exercise of jurisdiction would have satisfied the requirements of due process.

### B. *Due Process*

The determination of whether a district court can exercise personal jurisdiction over a non-resident defendant is itself a two-part inquiry. In the first prong of our due process inquiry, we consider whether the defendants, LIGA and SCIGA, standing in the shoes of the insolvent insurer, engaged in minimum contacts with the State of Alabama. In the second prong of our inquiry, we consider whether the exercise of personal jurisdiction over the defen-

---

1. Linda M. Lasley, Patricia Winters, and Debra R. Puebla, *Insurance Guaranty Funds: The* *New 'Money Pit'?,* 416 Practicing Law Institute, Comm. 113 (March 1, 1987).

dants would offend "traditional notions of fair play and substantial justice." *Madara*, 916 F.2d at 1516 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

### 1. Minimum Contacts

In analyzing the parties' arguments we are guided by the language of several Supreme Court opinions. As the Supreme Court has stated:

[M]inimum-contacts analysis presupposes that two or more States may be interested in the outcome of a dispute, and the process of resolving potentially conflicting "fundamental substantive social policies" can usually be accommodated through choice-of-law rules rather than through outright preclusion of jurisdiction in one forum. (citations omitted)

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 483 n. 26, 105 S.Ct. 2174, 2188 n. 26, 85 L.Ed.2d 528 (1985) (citations omitted).

In 1989 Olivier, a resident of Louisiana, received a judgment in Alabama (the place where he sustained his injuries) against Merritt, a South Carolina corporation. Olivier contends that the judgment entitled him to proceed in Alabama against Merritt's bankrupt insurer, Midland. This would be undoubtedly correct but for the

bankruptcy of Midland. Alabama law respecting its long-arm statute states:

(a) Basis for Out of State Service.

(2) SUFFICIENT CONTACTS. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's:

(G) Contracting to insure any person, property, or risk located within this state at the time of contracting.[2]

Olivier maintains that his claim is a "covered claim" within the meaning of the Louisiana and South Carolina statutes governing the respective state insurance guaranty associations. Midland insured Merritt, a resident of South Carolina and a beneficiary of the SCIGA; Olivier was a resident of Louisiana and a beneficiary of the LIGA at the time of the insured event. *See* La.Rev.Stat.Ann. § 22:1379(3)(a),[3] S.C.Code Ann. § 38–31–20(6).[4]

Furthermore, Olivier argues that since his claim is a "covered claim," according to the respective statutes, LIGA and SCIGA are deemed insurers to the extent of Midland's obligations. *See* La.Rev.Stat.Ann. §§ 22:1382 A(1) and (2),[5] S.C.Code Ann. §§ 38–31–60(a) and (b).[6] We agree with Olivier's position.

---

**2.** Alabama Rules of Civil Procedure 4.2(a)(2)(G).

**3.** The text of this section after amendments in 1987 does not differ materially from the text as it existed at the time of Olivier's accident and the date of insolvency of Midland Insurance. The current text reads as follows:

"Covered claim" means an unpaid claim, including one for unearned premiums by or against the insured or agent, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970, and (i) The claimant or insured is a resident of this state at the time of the insured event; or (ii) The property from which the claim arises is permanently located in this state.

**4.** For the sake of brevity, where the South Carolina statutes governing SCIGA do not contain any important differences from the Louisiana statutes governing LIGA, we have omitted from this opinion the texts of the South Carolina statutes.

**5.** The relevant portions of these sections read as follows:

A. The association shall:
(1)(a) Be obliged to the extent of the covered claims. . . . ·
(2) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and *obligations of the insolvent insurer as if the insurer had not become insolvent.* (Emphasis added)

**6.** S.C.Code Ann. § 38–31–60(b) corresponds to La.Rev.Stat.Ann. § 22:1382 A(2). The first sentence of the paragraph in the South Carolina Code is virtually identical to its Louisiana counterpart. The South Carolina Legislature, however, added the following to paragraph (b) of § 38–31–60:

However, the Association has the right but not the obligation to defend an insured who is not a resident of this State at the time of the insured event unless the property from which the claim arises is permanently located in this State in which instance the Association does have the obligation to defend the insured.

Olivier contends that Midland is subject to personal jurisdiction in Alabama because it provided insurance coverage for Merritt for accidents that occurred while operating its vessels in Alabama waters. By guaranteeing payment of Midland's policies that provided insurance for claimants who are state residents or insureds who are state residents, Olivier contends LIGA and SCIGA should reasonably have foreseen that they would be subject to suit in other jurisdictions. Olivier claims that the statutes, which place LIGA and SCIGA in the position of an insolvent insurer, impose affirmative, extraterritorial obligations upon them. Because Midland is subject to personal jurisdiction in Alabama, both LIGA and SCIGA are subject to personal jurisdiction in Alabama. Olivier argues that LIGA's and SCIGA's statutory obligations establish minimum contacts with Alabama sufficient to justify the district court's exercise of personal jurisdiction over them.

As mere creations of their respective state statutes, LIGA and SCIGA claim they have not purposefully directed any activity toward the State of Alabama. Neither LIGA nor SCIGA maintains any offices or agents in Alabama. The associations contend that Midland's contacts with Alabama are not at issue since personal jurisdiction is not being sought after Midland, but after LIGA and SCIGA. LIGA and SCIGA claim that they will be denied due process if they are subject to legal liability in Alabama on account of the unilateral activity of a third party—Midland. We interpose that it is our view that Midland's activity was not unilateral. Midland was a member of SCIGA. The record is silent as to whether Midland was a member of LIGA, but we assume it was since LIGA did not raise this as a defense. A member of the association, acting within the framework of the Interstate compact who becomes insolvent, automatically makes the association the alter ego of that failed member.

In addition, LIGA and SCIGA argue that although it might have been foreseeable that the associations could become involved in litigation in Alabama, such foreseeability alone is insufficient to confer personal jurisdiction. LIGA and SCIGA maintain that foreseeability is only one factor to be considered in an analysis of a defendant's minimum contacts with a forum.

LIGA and SCIGA note that neither of the state insurance guaranty acts specifically authorizes suit against an insurance guaranty association outside the state which created the association. The associations argue that this conspicuous absence indicates that it was not the intent of the state legislatures to permit LIGA and SCIGA to be subject to suit in other jurisdictions.[7]

In support of their arguments, LIGA and SCIGA rely upon the reasoning of the district court in *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n.*, 715 F.Supp. 94, 97 (S.D.N.Y.1989), *aff'd on other grounds*, 896 F.2d 674 (2d Cir.1990). We are not persuaded by the court's reasoning in *Rhulen.* Indeed, we believe the district court decision concerning personal jurisdiction over AIGA and other state insurance guaranty associations is entitled to no weight since the Second Circuit held that the district court lacked subject matter jurisdiction; this holding precluded any consideration of the existence of personal jurisdiction over the defendants. *Rhulen*, 896 F.2d at 675–676.

For the reasons outlined below, we believe Olivier has the superior argument. In the seminal case, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, the Supreme Court of the United States held that the due process clause of the Fourteenth Amendment requires that a de-

---

7. We think this argument borders on the specious. The intent of the legislature had to be to protect their citizens as either policyholders or victims of the insolvency of an insurance company. It must be remembered that this issue has arisen not because Merritt became insolvent but because Midland Insurance Company became insolvent. If Merritt had remained solvent, it would have had to pay the judgment but for the existence of the guaranty associations. The South Carolina Legislature intended to protect its citizens (such as Merritt) who were policyholders from such losses. In reaching our conclusion in this case, we disregard the bankruptcy of Merritt.

fendant be subject to the personal jurisdiction of the court. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Thus, we recognize that even if the forum state is the most convenient location for litigation, the due process clause may act to divest a state's courts of the power to render a valid judgment if a defendant does not have the requisite minimum contacts with the forum. *World–Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. at 566; *Hanson v. Denckla*, 357 U.S. 235, 251, 254, 78 S.Ct. 1228, 1238, 1240, 2 L.Ed.2d 1283 (1958).

■ The Supreme Court has opined that the due process clause of the Fourteenth Amendment requires that defendants have "fair warning" that particular activities may subject them to the jurisdiction of foreign sovereigns. *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182. One of the considerations important in assessing whether or not a defendant has fair warning is the foreseeability of suit within the jurisdiction. The foreseeability that is critical in an analysis of minimum contacts is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. In attempting to define when a defendant should reasonably anticipate being haled into court, the Supreme Court has stated: "... there must be some act by which the defendant purposefully availed itself of conducting activities within the forum state." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239–1240. This requirement exists to ensure that a defendant will not be subject to legal liability in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183.

■ In the instant case, LIGA and SCIGA are subject to legal liability in Alabama neither on account of random contacts nor on account of the unilateral activity of Midland Insurance. In forming the state insurance guaranty associations to avoid federal legislation creating a national guaranty fund, the insurance industry had to anticipate that the guaranty associations would be haled into the same courts where their insolvent members would have been subject to the reach of due process. Thus, SCIGA and LIGA consented to service of process in Alabama in this case.

LIGA and SCIGA guaranteed payment of "covered claims." *See* La.Rev.Stat.Ann. § 22:1379(3)(a), S.C.Code Ann. § 38–31–20(6). The "claimant," Olivier, was a Louisiana resident and he has a colorable claim. The "insured," Merritt, was a South Carolina corporation and it has a colorable claim. Not only did LIGA and SCIGA guarantee payment of "covered claims," but they also assumed all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent. *See* La.Rev.Stat.Ann. § 22:1382 A(2), S.C.Code Ann. § 38–31–60(b). By the language of the statutes that govern LIGA and SCIGA, we conclude that these associations had fair warning that they could be subject to suit for "covered claims" in jurisdictions outside of their respective states.

■ Midland insured Merritt's operations in Alabama. Since the Supreme Court's decision in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), it has been the law that a company with insurance obligations in a state in which it has no other business has submitted to the jurisdiction of the state's courts. LIGA and SCIGA, by standing in Midland's shoes, also have consented to jurisdiction in the state's courts.

Our decision in this case is bolstered by a South Carolina Supreme Court opinion which was issued after our initial opinion was filed. In *Bell v. Senn Trucking Co. of Newberry*, 418 S.E.2d 310 (S.C.1992), the court stated the following:

The Georgia Pool first asserts that it is not amenable to suit in South Carolina under the South Carolina long-arm statute, S.C.Code Ann. § 36–2–803 (1976). We disagree. South Carolina's long-arm statute provides that a court may exercise personal jurisdiction over a person who contracts to insure any person, prop-

erty or risk located in South Carolina at the time of contracting. S.C.Code Ann. § 36–2–803(1)(f) (1976). Anglo–American is subject to in personam jurisdiction in South Carolina because it contracted with Senn of Georgia to insure a risk in South Carolina. The Georgia legislature requires the Georgia Pool to assume the obligations of an insolvent insurer in regard to covered claims for a specified period following the date an insurer is determined to be insolvent. Ga.Code Ann. § 33–36–9 (1990). The Georgia Pool is "deemed to be the insurer for such period with respect [to] and to the extent of the claims with all the rights, duties, and obligations of the insolvent insurer...." Id. Moreover, as a condition of doing business in Georgia, an insurer is deemed to have appointed the Georgia Pool as its agent with respect to the investigation, adjustment, compromise, and settlement of covered claims in the event the insurer becomes insolvent. Id. § 33–36–13.

Based on the plain language of the Georgia Code, once Anglo–American became insolvent, the Georgia Pool became subject to the jurisdiction of the courts of this State as Anglo–American's alter-ego and agent. We find that the trial judge did not err in holding that the Georgia Pool is subject to in personam jurisdiction in South Carolina.

418 S.E.2d at 311–12.

We conclude that the associations' obligations to defend suits in other jurisdictions would not be unduly burdensome. Indeed, both LIGA and SCIGA may alleviate the cost of litigation in other jurisdictions by adjusting their insurance assessments. Or if the expenses are too great, they have the option of altering their obligations and coverage for claims. *Cf. World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

**2. Fair Play and Substantial Justice**

■ Once a court has decided that a defendant has established minimum contacts within a forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. As the Supreme Court has stated, other factors may serve to establish the reasonableness of personal jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184. Some of these factors include: the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

In addition, as the Supreme Court of the United States has noted "... modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee,* 355 U.S. at 222–223, 78 S.Ct. at 201. The Supreme Court subsequently stated that the historical developments noted in *McGee* have only accelerated in the generation since that case was decided. *World–Wide Volkswagen,* 444 U.S. at 293, 100 S.Ct. at 565. Requiring adjudication in Alabama will not impose a substantial burden on LIGA and SCIGA.

It would be unduly burdensome, however, to require Olivier to seek coverage for his claim from LIGA in Louisiana courts and from SCIGA in South Carolina courts. Such a requirement would spread thin his resources and would hamper Olivier's ability to obtain quick, convenient, and effective relief. *See McGee,* 355 U.S. at 228, 78 S.Ct. at 201. Indeed, it would frustrate the very purposes of the state insurance guaranty associations. *See e.g.,* La.Rev.Stat.Ann. § 22:1376. Furthermore, a requirement that Olivier sue in both Louisiana and South Carolina would pose an unnecessary waste of precious judicial resources. Separate litigations do not necessarily insure fairness; in this case they would inhibit it.

## III. CONCLUSION

For the reasons stated above, we RE-VERSE the order of the district court and REMAND the case for further proceedings consistent with this opinion.