The TEXAS PROPERTY AND CASUAL-TY INSURANCE GUARANTY ASSOCI-ATION and Pennsylvania Insurance Guaranty Association, Appellants,

v.

The BOY SCOUTS OF AMERICA; The Penn Mountains Council of the Boy Scouts of America; The Forest Lake Council of the Boy Scouts of America; The Philadelphia Council of the Boy Scouts of America; and The Valley Forge Council of the Boy Scouts of America, Appellees.

No. 03–96–00353–CV.

Court of Appeals of Texas, Austin.

June 12, 1997.

Rehearing Overruled July 24, 1997.

Richard E. Tulk, Tulk & Deaderick, Austin, for Pennsylvania Insurance Guaranty Association.

Daniel Jordan, Morehead Jordan & Carmone, P.C., Austin, for Texas Property & Casualty Insurance Guaranty Association.

Stephen L. Tatum, Brown, Herman, Scott, Dean & Miles, L.L.P., Fort Worth, for Appellees.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

KIDD, Justice.

This case arises out of claims brought against the Boy Scouts of America (the "Boy Scouts") and several of its local councils in Pennsylvania (the "Pennsylvania councils"),[1] appellees. After the Boy Scouts settled these claims, they sought indemnification from the Texas Property and Casualty Insurance Guaranty Association ("Texas Guaranty"), and the Pennsylvania councils sought indemnification from the Pennsylvania Insurance Guaranty Association ("Pennsylvania Guaranty"). The trial court granted summary judgment in favor of the Boy Scouts and the Pennsylvania councils. Both Pennsylvania Guaranty and Texas Guaranty appeal. We will reverse the trial court's summary judgment.

## BACKGROUND

The Boy Scouts is a corporation chartered by an act of Congress with its principal place of business in Texas. The Pennsylvania councils are each independent corporations chartered by and doing business in Pennsylvania. Boy Scouts operates a risk management program for itself and its more than four hundred local councils throughout the United States, including the Pennsylvania councils. As part of this risk management

---

1. The Forest Lake Council, the Valley Forge Council, the Philadelphia Council, and the Penn Mountains Council are all local councils of the Boy Scouts of America located in Pennsylvania. Collectively they will be referred to as the "Pennsylvania councils."

program, the Boy Scouts determines how much insurance is needed and how the insurance should be structured.

In 1984 and 1985, the Boy Scouts purchased liability insurance policies from Mission National Insurance Company ("Mission"). The 1984 policy afforded the Boy Scouts and its local councils $5,000,000 per occurrence in coverage, subject to a $500,000 per occurrence self-insured retention. The 1985 policy afforded $1,000,000 of coverage per occurrence—also subject to a $500,000 per occurrence self-insured retention. Mission was licensed to do business in both Texas and Pennsylvania and was a participant in both states' insurance guaranty fund programs. Mission became insolvent and was placed in liquidation in 1987.

This case arises out of three negligence lawsuits filed against the Boy Scouts and the Pennsylvania councils. Both the Boy Scouts and the Pennsylvania councils were named insureds under the 1984 and 1985 Mission policies; they contended, therefore, that these lawsuits were covered claims under these policies. Because of Mission's insolvency, the Boy Scouts filed claims with Texas Guaranty on its own behalf and with Pennsylvania Guaranty on behalf of the Pennsylvania councils. Both guaranty associations rejected the claims.

After Pennsylvania Guaranty and Texas Guaranty rejected the claims, the Boy Scouts paid the costs of defending and settling the lawsuits. The Boy Scouts and the Pennsylvania councils then filed this action against both Pennsylvania Guaranty and Texas Guaranty seeking damages and declaratory relief. All parties filed motions for summary judgment, and the trial court granted the Boy Scouts' and the Pennsylvania councils' motions. The court awarded the Pennsylvania councils damages and attorney's fees totaling $342,658.45 to be paid by Pennsylvania Guaranty. It also awarded the Boy Scouts damages and attorney's fees totaling $126,500 to be paid by Texas Guaranty. Pennsylvania Guaranty and Texas Guaranty now appeal, challenging the trial court's summary judgment.

## DISCUSSION

### *Pennsylvania Guaranty's Appeal*

Upon being served with the Boy Scouts' complaint, Pennsylvania Guaranty filed a special appearance objecting to the trial court's exercise of personal jurisdiction over Pennsylvania Guaranty. *See* Tex.R. Civ. P. 120a. The trial court overruled the special appearance. Pennsylvania Guaranty now challenges the trial court's summary judgment on the grounds that the court lacked *in personam* jurisdiction over Pennsylvania Guaranty and therefore violated Pennsylvania Guaranty's constitutional right to due process of law. *See* U.S. Const. amend. XIV.

Pennsylvania Guaranty is a quasi-public entity established by the Pennsylvania legislature to protect Pennsylvania residents from financial loss resulting from the insolvency of insurance carriers. *See* 40 Pa. Cons.Stat. §§ 1701.102(1), 1701.103(5)(a).[2] Because the Boy Scouts is not a Pennsylvania resident, its claims against Mission are not covered claims under the Pennsylvania Guaranty Association Act (the "Pennsylvania Act"). The Pennsylvania councils are, however, Pennsylvania residents and their claims may be covered under the act. *See id.* § 1701.103(5)(a).

Pennsylvania Guaranty argues that it has no contacts with the State of Texas and, therefore, Texas courts are without jurisdiction to hear the dispute between Pennsylvania Guaranty and the Pennsylvania councils. Texas's long-arm statute grants the state's courts personal jurisdiction over nonresidents doing business in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (West 1986). The long-arm statute extends personal jurisdiction "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). The federal constitution protects a nonresident defendant's "liberty interest in not being subject to the binding judgments of a forum with which [it]

---

2. The Texas Property and Casualty Insurance Guaranty Act provides similar protection for Tex-

as residents. *See* Tex. Ins.Code Ann. art. 21.28–C, §§ 2, 5(8) (West Supp.1997).

has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). Accordingly, we must determine whether the federal constitution allows Texas courts to assert personal jurisdiction over Pennsylvania Guaranty. *See id.*

■ The Due Process Clause of the United States Constitution prohibits a state court from exercising personal jurisdiction over a nonresident defendant unless the defendant " 'purposefully established "minimum contacts" in the forum state.' " *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quoting *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. at 2183). Even if the defendant has purposefully established minimum contacts, the state may not exercise personal jurisdiction over the defendant if such an exercise would offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *accord Asahi Metal Indus.,* 480 U.S. at 113, 107 S.Ct. at 1032–33.

■ The Boy Scouts and the Pennsylvania councils contend that Pennsylvania Guaranty is subject to the personal jurisdiction of Texas's courts. They argue that we need not look directly at Pennsylvania Guaranty's contacts with Texas to determine whether such jurisdiction exists because Pennsylvania Guaranty steps into Mission's shoes for the purposes of personal jurisdiction.

Under the Pennsylvania Act, all insurance companies writing property and casualty insurance in Pennsylvania must be Pennsylvania Guaranty members. 40 Pa. Stat. § 1701.201(a). When a member insurance company becomes insolvent, Pennsylvania Guaranty is "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent." *Id.* § 1701.201(b)(1)(ii). Mission was

a member of Pennsylvania Guaranty. Accordingly, upon Mission's insolvency, Pennsylvania Guaranty was deemed to be Mission to the extent of Pennsylvania Guaranty's obligation on the claims of the Boy Scouts and the Pennsylvania councils. *See id.* The Boy Scouts and the Pennsylvania councils contend that the Pennsylvania Act means that, for purposes of personal jurisdiction, Pennsylvania Guaranty steps into the shoes of an insolvent member insurance company. By this argument, if an insolvent insurer is subject to the jurisdiction of a particular state, Pennsylvania Guaranty should also be subject to that state's personal jurisdiction. Accordingly, the Boy Scouts and the Pennsylvania councils argue that, because Mission was subject to Texas's jurisdiction, the trial court had personal jurisdiction over Pennsylvania Guaranty in this action.

Pennsylvania Guaranty disputes this interpretation of the Pennsylvania Act. It argues that the act does not automatically subject Pennsylvania Guaranty to personal jurisdiction in another state. Instead, it argues that we must perform a minimum contacts analysis to determine whether Pennsylvania Guaranty itself *purposefully* established sufficient contacts with the State of Texas to be subject to the state's jurisdiction. Whether Texas courts have jurisdiction over another state's insurance guaranty association is a question of first impression.

### Does Pennsylvania Guaranty Stand in Mission's Shoes?

We must first determine whether Pennsylvania Guaranty "stands in the shoes" of Mission for the purpose of *in personam* jurisdiction. Only five other jurisdictions have addressed this issue. Of these five jurisdictions, three determined that the forum state had personal jurisdiction over another state's guaranty association. In only one of these three cases, however, did a court decide that the forum state had jurisdiction solely on the basis of a statute deeming the nonresident guaranty association to be the insolvent insurer. *See Bell v. Senn Trucking Co.,* 308 S.C. 364, 418 S.E.2d 310, 312 (1992) (holding that, under the plain language of the statute, "once [the insurer] be-

came insolvent, the [guaranty association] became subject to the jurisdiction of the courts of [the forum s]tate as [the insurer's] alter-ego and agent").

In the two remaining cases in which courts held another state's guaranty association subject to the forum state's personal jurisdiction, the courts did so only after performing some type of minimum contacts analysis. *See Olivier v. Merritt Dredging Co.*, 979 F.2d 827 (11th Cir.1992); *Ruetgers–Nease Chem. Co. v. Firemen's Ins.*, 236 N.J.Super. 473, 566 A.2d 227 (App.Div.1989). Both cases involved statutory language similar to the Pennsylvania Act—*i.e.*, the nonresident guaranty association was deemed the insolvent insurer. *See Olivier*, 979 F.2d at 831; *Ruetgers–Nease Chem. Co.*, 566 A.2d at 228. The courts refused, however, to use this language as the *sole basis* for exercising personal jurisdiction over the guaranty associations. Instead, the courts recognized that "the touchstone of jurisdiction ... is ... whether the defendant has at least minimum contacts with the forum such that the acceptance of jurisdiction does not offend traditional notions of fair play and substantial justice." *Ruetgers–Nease Chem. Co.*, 566 A.2d. at 229; *see Olivier*, 979 F.2d at 830–31. Accordingly, each court performed some kind of minimum contacts analysis in reaching its conclusion that the guaranty association was subject to personal jurisdiction in the forum state. *See Olivier*, 979 F.2d at 831–34; *Ruetgers–Nease Chem. Co.*, 566 A.2d at 229.

In contrast, both the Florida Supreme Court and a California appellate court have held that a nonresident guaranty association was not subject to the forum state's personal jurisdiction. *See Pennsylvania Life & Health Ins. Guar. Ass'n v. Superior Court*, 22 Cal.App.4th 477, 27 Cal.Rptr.2d 507 (1994); *Georgia Insurers Insolvency Pool v. Brewer*, 602 So.2d 1264 (Fla.1992). These courts rejected the argument that, because a statute deems the guaranty association to be the insolvent insurer, the guaranty association is automatically subject to the personal jurisdiction of any state having jurisdiction over the insolvent insurer. Both the Florida and California courts recognized that a guaranty association stands in the shoes of an

insolvent insurer for *some* purposes; however, they noted that a guaranty association's liability is strictly limited to statutorily defined, covered claims. *See Pennsylvania Life & Health Ins. Guar. Ass'n*, 27 Cal. Rptr.2d at 513; *Georgia Insurers Insolvency Pool*, 602 So.2d at 1267. Thus, both courts reasoned, the obligations of a guaranty association "are not necessarily coextensive with the insolvent insurer." *Pennsylvania Life & Health Ins. Guar. Ass'n*, 27 Cal.Rptr.2d at 513; *see also Georgia Insurers Insolvency Pool*, 602 So.2d at 1267. The courts concluded that the statutory obligations of a guaranty association "are substantive obligations of supplying limited amounts of insurance under limited circumstances" and do not amount to a guaranty association's consent to another state's personal jurisdiction. *Georgia Insurers Insolvency Pool*, 602 So.2d at 1267; *see also Pennsylvania Life & Health Ins. Guar. Ass'n*, 27 Cal.Rptr.2d at 513. Accordingly, both courts performed jurisdictional analysis to determine whether the guaranty association itself had purposefully established minimum contacts with the forum state. *Georgia Insurers Insolvency Pool*, 602 So.2d at 1268–69; *see also Pennsylvania Life & Health Ins. Guar. Ass'n*, 27 Cal. Rptr.2d at 510–14.

Like the Florida and California courts, we do not believe that a guaranty association stands in the shoes of an insolvent insurer for the purpose of personal jurisdiction. The Due Process Clause of the United States Constitution protects Pennsylvania Guaranty's liberty interest in not being subject to the jurisdiction of Texas's courts unless, by its own purposeful actions, it has established sufficient contacts with Texas. *See Burger King*, 471 U.S. at 471–72, 105 S.Ct. at 2181–82. Accordingly, unless Pennsylvania Guaranty consented to Texas's jurisdiction, we must determine whether Pennsylvania Guaranty's actions establish some basis for Texas courts to exercise jurisdiction over it. We hold that the wording of the Pennsylvania Act does not amount to such consent. When one of Pennsylvania Guaranty's member-insurers becomes insolvent, Pennsylvania Guaranty does not assume *all* of the insurer's obligations. Instead, it assumes the insurer's

obligations only on those statutorily defined "covered claims." *See* 40 Pa. Stat. § 1701.103(5) (defining covered claims). Even within the context of a covered claim, Pennsylvania Guaranty assumes an insolvent insurer's obligations only to the extent that those obligations do not exceed $300,000. *Id.* § 1701.201(b)(1)(i). Furthermore, the Pennsylvania Act deems Pennsylvania Guaranty the insolvent insurer only *to the extent of its obligation on a covered claim.* *Id.* § 1701.201(b)(1)(ii). It is therefore apparent from the act's plain language that Pennsylvania Guaranty stands in the shoes of an insolvent insurer for limited purposes—*i.e.,* Pennsylvania Guaranty assumes only certain *substantive* obligations of the insolvent insurer. Given this language, we cannot say that the Pennsylvania legislature intended to subject Pennsylvania Guaranty to the personal jurisdiction of any state in which an insolvent member-insurer sold insurance.

Additionally, subjecting guaranty associations like Pennsylvania Guaranty to the possibility of suits in numerous jurisdictions appears to contravene the state's public purpose for establishing guaranty associations. Guaranty associations, having undertaken the expense of defending themselves in multiple jurisdictions, could be impeded from protecting local citizens from the insolvency of their insurers. *See Georgia Insurers Insolvency Pool,* 602 So.2d at 1269. We therefore hold that Pennsylvania Guaranty does not stand in Mission's shoes for the purposes of personal jurisdiction; instead, there must be an independent basis for Texas's assertion of jurisdiction over Pennsylvania Guaranty.

### Minimum Contacts

Accordingly, we must determine whether Pennsylvania Guaranty has *purposefully* established sufficient minimum contacts with Texas to be subject to the personal jurisdiction of the state's courts. Only if we determine that such contacts exist need we determine whether Texas's exercise of personal jurisdiction would offend notions of fair play and substantial justice.

■■■■ Minimum contacts cannot be established unilaterally by those claiming a relationship with the nonresident defendant. Rather, it is essential that the defendant act to purposefully avail itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Accordingly, a state's courts cannot exercise personal jurisdiction over a nonresident defendant solely on the basis of " 'random,' 'fortuitous,' or 'attenuated' contacts," or on the unilateral actions of others. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183. A state court can properly exercise jurisdiction, however, when a defendant's actions, purposefully directed toward the forum state, proximately result in contacts creating a "substantial connection" between the defendant and the forum state. *Id.; see also Asahi Metal Indus.,* 480 U.S. at 109, 112, 107 S.Ct. at 1030–1031, 1032.

■■■■ "Foreseeability" can be a factor in determining whether the defendant has established a substantial connection between itself and the forum state. *Asahi Metal Indus.,* 480 U.S. at 109–112, 107 S.Ct. at 1030–1032; *Guardian Royal Exch.,* 815 S.W.2d at 227. Foreseeability alone, however, is not a sufficient basis for jurisdiction under the Due Process Clause. *Asahi Metal Indus.,* 480 U.S. at 109, 107 S.Ct. at 1030–1031. As noted above, the unilateral actions of another, no matter how foreseeable, cannot subject a nonresident defendant to the personal jurisdiction of the forum state. When, however, a nonresident defendant's "conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there," the defendant is placed on notice that it is subject to the state's jurisdiction and the requirements of the Due Process Clause are satisfied. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■■■■ In asserting personal jurisdiction over a nonresident defendant, a state's courts may exercise either specific or general jurisdiction. The state exercises specific jurisdiction over a defendant when the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum." *Helicopte-*

*ros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (1984). In determining whether a court may constitutionally exercise specific jurisdiction over a nonresident defendant, the court must focus on the relationship between the defendant, the forum state, and the litigation. *Id.* at 414, 104 S.Ct. at 1872. If, however, the controversy does not relate to or arise out of a defendant's contacts with the state, a state's court may exercise general jurisdiction over the defendant when its contacts with the state are "continuous and systematic." *Id.* at 414–416 & n. 9, 104 S.Ct. at 1872–1873 & n. 9.

We will first, therefore, examine the relationship between Pennsylvania Guaranty, this lawsuit, and the State of Texas to determine whether Pennsylvania Guaranty purposefully established sufficient minimum contacts to allow the trial court to exercise specific jurisdiction over Pennsylvania Guaranty. As noted above, Pennsylvania Guaranty is a quasi-public entity established by Pennsylvania to mitigate the losses of state residents having claims against insolvent insurers. As such, Pennsylvania Guaranty supplies limited amounts of insurance under limited circumstances; it is not, however, in the business of selling insurance—it has not entered into insurance contracts, transacted business, or maintained offices in Texas. Pennsylvania Guaranty is a creature of statute, created by the Pennsylvania legislature to protect Pennsylvania residents and property. From the record, it is clear that Pennsylvania Guaranty itself established no contacts with Texas.

Although it was foreseeable to Pennsylvania Guaranty that its member-insurers would contract to provide insurance in Texas, such foreseeability is not enough to subject Pennsylvania Guaranty to personal jurisdiction in Texas. *See World–Wide Volkswagen Corp.,* 444 U.S. at 295–297, 100 S.Ct. at 566–567. Instead, we must determine whether Pennsylvania Guaranty, through its "conduct and connections" with Texas, should have reasonably anticipated being haled into court here. *See id.* at 297, 100 S.Ct. at 567. As noted above, Pennsylvania Guaranty has no contacts with Texas; therefore it had no conduct and connections with Texas from which it could reasonably anticipate being subjected to Texas's jurisdiction.

Furthermore, the relationship between this lawsuit and Texas is tenuous at best.[3] This lawsuit, as it relates to Pennsylvania Guaranty, involves the question of whether the Pennsylvania councils have covered claims against Pennsylvania Guaranty. The Pennsylvania councils, plaintiffs in this lawsuit, are residents of Pennsylvania. The underlying negligence claims against the Pennsylvania councils—*i.e.,* the claims that the Pennsylvania councils argue are covered claims—arose out of acts occurring in Pennsylvania. Deciding whether these claims constitute "covered claims" under the Pennsylvania Act involves applying Pennsylvania law. The only relationship between this lawsuit and Texas arises out of the Boy Scouts' role as risk manager for the Pennsylvania councils. The Boy Scouts is a Texas resident and, as such, does not have a covered claim against Pennsylvania Guaranty. The State of Texas has an interest in ensuring that state residents, like the Boy Scouts, are fairly protected from the risk of an insurance company becoming insolvent; however, Texas residents receive such protection from the Texas Property and Casualty Insurance Guaranty Association. Accordingly, Texas's interest in the lawsuit against Pennsylvania Guaranty is minimal.

From the record, we conclude that Pennsylvania Guaranty itself took no action to purposefully establish "minimum contacts" with Texas. Thus, there is no "substantial connection" between Pennsylvania Guaranty and Texas, and this lawsuit does not arise out of Pennsylvania Guaranty's contacts with Texas. We therefore hold that Pennsylvania Guaranty is not subject to the state's specific jurisdiction. *See Guardian Royal Exch. Assurance,* 815 S.W.2d at 230. Additionally,

---

**3.** The State of Texas's interest in the litigation cannot by itself subject a nonresident defendant to the jurisdiction of the state's courts; however, such an interest may establish jurisdiction "upon a lesser showing of minimum contacts than would otherwise be required." *Guardian Royal Exch. Assurance,* 815 S.W.2d at 229.

Pennsylvania Guaranty does not have the continuous and systematic contacts with the state necessary to subject it to the general jurisdiction of Texas courts. *See id.* Accordingly, we sustain Pennsylvania Guaranty's first point of error. Because Texas courts lack jurisdiction over Pennsylvania Guaranty, we need not address its remaining points of error.

### Texas Guaranty's Appeal

Texas Guaranty's appeal involves a negligence claim brought by James Post and his parents (the "Post claim") against the Boy Scouts and the Penn Mountains Council.[4] The Post claim alleged that James Post, while attending a scout camp in Pennsylvania, suffered injuries that rendered him a quadriplegic. The Post complaint alleged that these injuries were caused by the negligence of the Boy Scouts and/or the Penn Mountains Council, and sought damages in excess of thirty million dollars.

Because of Mission's insolvency, the Boy Scouts notified Texas Guaranty of the Post claim; however, Texas Guaranty rejected the claim.[5] To protect itself and the Penn Mountains Council, the Boy Scouts entered into settlement negotiations with the Posts and eventually settled the Post claim for $4,750,-000. The Boy Scouts paid a total of $1,500,-000 of this settlement; this amount constituted the Boy Scouts' $500,000 per occurrence self-insured retention and Mission's $1,000,-000 per occurrence obligation.[6] The Boy Scouts then filed suit against Texas Guaranty alleging that the Post claim was a covered claim under the Texas Property and Casualty Insurance Guaranty Act (the "Texas Act") and that it was therefore entitled to recovery from Texas Guaranty under the Texas Act for the settlement of that claim. The trial

court granted the Boy Scouts' motion for summary judgment and awarded it $126,500.[7] Texas Guaranty appeals, contending that (1) the Boy Scouts was not obligated to pay the Post claim because it voluntarily paid the settlement, and that (2) there is a fact question as to whether the Boy Scouts settled the Post claim in good faith and as to whether the settlement is reasonable in amount. Texas Guaranty also argues the trial court erred by awarding the Boy Scouts attorney's fees and post-judgment interest.

We review the trial court's summary judgment de novo. We must determine whether the Boy Scouts met its burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. We will accept as true all evidence favorable to Texas Guaranty and indulge every reasonable inference and resolve every doubt in its favor. *See Nixon v. Mr. Property Mgt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

### Obligation to Pay/Voluntary Settlement

In its first point of error, Texas Guaranty contends the trial court erred by failing to grant its motion for summary judgment because the summary-judgment evidence establishes that the Boy Scouts was not "legally obligated" to pay the Post claim or in the alternative that the Boy Scouts paid the $4,750,000 settlement as a volunteer. Texas Guaranty argues therefore that, under the 1985 Mission policy, it was not obligated to pay the Boy Scouts for the Post settlement and that the trial court erred in denying Texas Guaranty's motion for summary judgment.

To make its argument, Texas Guaranty relies on language in the 1985 Mission insurance policy stating that Mission agreed to

---

**4.** The Texas Property and Casualty Insurance Guaranty Act, like the Pennsylvania Act, protects state residents with "covered claims" from the risk of their insurer becoming insolvent. *See* Tex. Ins.Code Ann. art 21.28–C, §§ 2, 5(8) (West Supp.1997). Because the Penn Mountains Council is not a Texas resident, it is not a part of this appeal as it relates to Texas Guaranty.

**5.** The Boy Scouts originally filed this claim with Mission's receiver. Pursuant to Act of June 17, 1993, 73d Leg., R.S., ch. 685, § 9.23, 1993 Tex.

Gen. Laws 2559, 2638, Texas Guaranty has assumed the receiver's responsibilities. Therefore all references will be to Texas Guaranty.

**6.** The balance of the settlement was paid by other excess insurance carriers.

**7.** The Texas Act limits the recovery to $100,000. Tex. Ins.Code Ann. art. 21.28–C, § 5(8) (West Supp.1997). The balance of $26,500 constitutes attorney's fees.

"pay on behalf of the [Boy Scouts] all sums which the [Boy Scouts] shall become *legally obligated to pay* as damages on account of ... personal injuries...." (Emphasis added.) By statute, Texas Guaranty assumes the policy obligations of Mission to the extent that those obligations are "covered claims." *See* Tex. Ins.Code Ann. art. 21.28–C, § 8 (West Supp.1997).[8] Texas Guaranty argues that it is not obligated to pay any amount for the Post claim unless the Boy Scouts can prove that the Boy Scouts itself was legally obligated to pay the settlement of the Post claim. Texas Guaranty notes that the Boy Scouts and Penn Mountains Council are separate legal entities and that the injury underlying the Post claim occurred on property owned, maintained, and operated by the Penn Mountains Council. Therefore, Texas Guaranty contends that the Penn Mountains Council, and not the Boy Scouts, was legally obligated to pay the Post claim. Texas Guaranty also relies on an admission made by the Boy Scouts in discovery that the Boy Scouts was not legally obligated to pay the Post claim.

 What Texas Guaranty fails to recognize, however, is that a court judgment is not the only manner by which the Boy Scouts could become legally obligated to pay the Post claim. A legal obligation can also arise out of a contract, such as a settlement. Therefore, Mission was "legally obligated" to indemnify the Boy Scouts for covered claims, whether the legal obligation was fixed by judgment or by settlement contract. *See Willcox v. American Home Assurance Co.,* 900 F.Supp. 850, 856 (S.D.Tex.1995). Indeed, the Mission policy expressly recognized that Mission had an obligation to indemnify the Boy Scouts for its settlements of covered claims. Under the policy, Mission was responsible for indemnifying the Boy Scouts to the extent of the Boy Scouts' "ultimate net loss" in excess of the underlying self-insured retention. The policy defines "ultimate net loss" as "the total sum which the [Boy Scouts] become[s] obligated to pay by reason of personal injuries ... either through adjudication *or compromise.*" (Emphasis added.)

 Furthermore, the Boy Scouts' admission that it was not legally obligated to pay the Post claim does not establish that the Post settlement was not a covered claim under the Mission policy. This admission merely reflects that the Post claim never resulted in an adjudication on the merits. In settling the Post claim, the Boy Scouts, as is customary, did not admit liability for the injuries James Post suffered. The Boy Scouts' admission that it was not *legally obligated* to pay the Post claim is therefore consistent with its compromise and settlement of the Post claim.

Texas Guaranty's obligations to the Boy Scouts are defined by statute: Texas Guaranty assumes Mission's obligations to the extent that they are "covered claims" as defined by the Texas Act. Tex. Ins.Code Ann. art. 21.28–C, § 8(b) (West Supp.1997). That act defines "covered claim" in pertinent part as "an unpaid claim of an insured ... that arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this act applies." *Id.* § 5(8). As noted above, settlements are expressly within the coverage of the Mission policy. The Boy Scouts was a named defendant in the underlying lawsuit and its settlement of the Post claim is therefore covered under the Mission policy. Accordingly, we hold that the summary-judgment evidence does not establish as a matter of law that the Boy Scouts was not legally obligated to pay the Post claim. To the contrary, the evidence establishes that the Boy Scouts was legally obligated to pay the settlement and that the settlement was within the coverage of the Mission policy.

 The flip side of Texas Guaranty's argument that Boy Scouts was not legally obligated to pay the Post claim is that the Boy Scouts paid the claim as a volunteer. Texas Guaranty contends that, even if settlements are covered under the terms of the Mission policy, this particular settlement is not covered because only the Penn Mountains Council, and not the Boy Scouts, could be held liable for James Post's injuries. Tex-

---

**8.** Although this case was filed in the trial court in 1989 and the Boy Scouts first moved for summary judgment in 1990, we cite to the current statute for convenience.

as Guaranty argues therefore that the Boy Scouts paid the Post settlement as a volunteer on behalf of the Penn Mountains Council.

Texas Guaranty relies on *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287 (Tex. 1996), for the proposition that the Boy Scouts could not have been held liable for James Post's injuries. In *Golden Spread*, the Boy Scouts took the position that it was not negligent and could not be held liable for the negligence of one of its local councils. The Texas Supreme Court agreed, holding that (1) *given the facts of the case* the Boy Scouts itself owed no duty to the plaintiff and (2) the Boy Scouts could not be *vicariously* liable for the negligence of one of its local councils under a *respondeat superior* theory. *Id.* at 290.

This case, however, is clearly distinguishable from *Golden Spread.* The petition in the Post claim named the Boy Scouts as a defendant, alleging that *both* the Boy Scouts and the Penn Mountains Council were jointly and severally liable for James Post's injuries. Because the Post claim was never tried on the merits, we cannot evaluate all of the factual bases for allegations of independent responsibility of the Boy Scouts. However, we cannot say as a matter of law that the Boy Scouts could not have been *independently* liable for the Post claim. Accordingly, by settling the case, the Boy Scouts was shielding itself as well as the Penn Mountains Council from potential damages. We conclude that the Boy Scouts did not settle the Post claim as a mere volunteer. We hold that the trial court did not err by denying Texas Guaranty's motion for summary judgment. We overrule Texas Guaranty's first point of error.

### *Reasonableness of Settlement*

In its second point of error, Texas Guaranty argues that the trial court erred in granting the Boy Scouts' motion for summary judgment because a question of material fact exists as to whether the Boy Scouts settled the Post claim in good faith and for a reasonable amount. Under the Texas Act, Texas Guaranty is not bound by any settlement entered into by the insured of an insolvent member insurance company. Tex. Ins.

Code Ann. art. 21.28–C, § 8(d) (West Supp. 1997). Instead, Texas Guaranty may review such settlements to determine the extent to which they may be contested. *Id.* When an insured settles a claim without the consent of the insurer, the insured must show, at a minimum, that the settlement was made in good faith, upon a reasonable basis, and for a reasonable amount. *See Texas United Ins. Co. v. Burt Ford Enters., Inc.,* 703 S.W.2d 828, 835 (Tex.App.—Tyler 1986, no writ) (holding that, if a liability insurer wrongfully refuses to defend a suit filed against its insured and the insured enters into a settlement without the sanction of a judgment, the insured may recover for the settlement upon proof of facts establishing that the settlement was made in good faith, upon a reasonable basis, and for a reasonable amount); *see also Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.,* 490 S.W.2d 818, 824 (Tex. 1972), *overruled on other grounds by Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.1987); *Safeco Ins. Co. of Am. v. Gaubert,* 829 S.W.2d 274, 280–81 (Tex.App.—Dallas 1992, writ denied) (a settling indemnitee can recover from his indemnitor upon proof of his "potential liability" as well as the reasonableness of the settlement between himself and the third party). Because Texas Guaranty has the authority to review settlements made by an insured, it argues that it may contest the good faith and reasonableness of the Post-claim settlement. We agree that the good faith and reasonableness of the Post-claim settlement are the ultimate and controlling issues in this lawsuit.

The Boy Scouts argues that, because Texas Guaranty denied its claim, Texas Guaranty cannot challenge the reasonableness of the Post-claim settlement. In support of this contention, the Boy Scouts cites *Employers Casualty Co. v. Block,* 744 S.W.2d 940 (Tex. 1988), a case suggesting that, when an insurer wrongfully declines to defend a claim, the insurer cannot collaterally attack the reasonableness of an agreed judgment resulting from a settlement. *Id.* at 943. *Employers Casualty Co.* did not involve a guaranty association and is distinguishable from this case. Moreover, the supreme court has recently disapproved of this suggestion in *State Farm*

*Fire & Casualty Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex.1996).

In *Employers Casualty Co.*, the insurer had a duty to defend covered claims, was notified of the claim asserted against the insured, and declined to defend the claim. *Id.* at 942–43. Therefore, the insurer was not a stranger to the agreed judgment and could only attack that judgment collaterally. *See Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.).

In this case Mission, and therefore Texas Guaranty, had no duty to defend claims against the Boy Scouts. Furthermore, by statute, Texas Guaranty is not bound by any settlement entered into by the Boy Scouts. *See* Tex. Ins.Code Ann. art. 21.28–C, § 8(d) (West Supp.1997). Indeed, under the Texas Act, Texas Guaranty is charged with reviewing the Boy Scouts' settlement of the Post claim and determining whether and to what extent it can be challenged. No such statute was in issue in *Employers Casualty Co.* Therefore, we conclude that Texas Guaranty can challenge the reasonableness of this settlement.

■ The Boy Scouts contends there is summary-judgment evidence establishing it entered into the Post settlement in good faith and for a reasonable amount. Among such evidence, the Boy Scouts notes that: (1) the complaint in the Post claim alleged that the Boy Scouts' negligence caused James Post's injuries; (2) James Post's injuries rendered him quadriplegic; and (3) the complaint in the Post claim sought damages in excess of thirty million dollars. We agree with the Boy Scouts that these facts constitute evidence from which a *fact-finder* could conclude that the Boy Scouts made the settlement in good faith, upon a reasonable basis, and for a reasonable amount. However, although this evidence appears to be uncontested, it does nothing more than create a fact issue.

Additionally, there is summary-judgment evidence that could support a fact-finding that the Post-claim settlement was unreasonable. Texas Guaranty points to the evidence that the Penn Mountains Council was a party to the Post-claim litigation and that the Penn Mountains Council alone owned and operated the scout camp at which James Post was injured. Given these facts, Texas Guaranty contends that the Penn Mountains Council should at least have been liable for some, if not all, the damages awarded in the Post-claim litigation. Therefore, Texas Guaranty asserts that it was unreasonable for the Boy Scouts to pay one hundred percent of the Post-claim settlement.

Because this question of good faith and reasonableness reaches us on summary judgment, we must accept as true all evidence favorable to Texas Guaranty. *See Nixon*, 690 S.W.2d. at 548–49. Reviewing the above summary-judgment evidence, we hold that a material fact issue exists as to whether the Boy Scouts entered into the Post-claim settlement in good faith, and whether the settlement was reasonable in amount. Accordingly, Texas Guaranty is entitled a jury trial on these narrow issues. *See Brodhead v. Dodgin*, 824 S.W.2d 616, 622 (Tex.App.—Austin 1991, writ denied). We sustain Texas Guaranty's second point of error.

Since the trial court's summary judgment must be reversed for a trial on the merits, we need not determine whether the trial court erred in granting the Boy Scouts judgment for attorney's fees and post-judgment interest.

## CONCLUSION

Because the trial court was without personal jurisdiction over Pennsylvania Guaranty, we reverse the trial court's summary judgment in favor of the Pennsylvania councils. We remand the cause as it relates to Pennsylvania Guaranty and the Pennsylvania councils to the trial court for entry of a dismissal. Because questions of material fact exist as to whether the Post-claim settlement was entered into in good faith and was reasonable in amount, we also reverse the trial court's summary judgment in favor of the Boy Scouts. We remand the cause as it relates to Texas Guaranty and the Boy Scouts to the trial court for a trial on the merits.