# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00286-CV

**Michael Wayne Briggs; John Cockerham, Individually and d/b/a Briggs-Cockerham, LLC; and Briggs-Cockerham, LLC, Appellants**

**v.**

**Seacoast Power, L.L.C.; Old Dominion Electric Cooperative; Energy Services, Inc.; CSC Services, Inc.; Cooperative Services International; and MCI Power Group, LLC, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. 96-03409, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

This is an expedited appeal from an order sustaining appellees' special appearance.[1] In one issue, we are asked to determine whether a Texas court can assert *in personam* jurisdiction over out-of-state corporations in a suit over a contract to be performed outside the State of Texas. Finding no basis for jurisdiction, we affirm the district court's order.

## FACTUAL BACKGROUND

This case arises out of an agreement to provide electrical power in Ecuador. The original contract was negotiated between Seacoast, Inc. ("Seacoast") and INECEL, an Ecuadorian

___

[1] We refer to Seacoast Power, L.L.C., Old Dominion Electric Cooperative, Energy Services, Inc., CSC Services, Inc., Cooperative Services International, and MCI Power Group, LLC, collectively as appellees unless we refer to one of them in its individual capacity.

governmental agency. When the contract was signed, Seacoast was wholly owned by appellants Michael Wayne Briggs and John Cockerham who were doing business as Briggs-Cockerham, LLC.[2] It soon became apparent that Seacoast would be unable to fulfill its contractual obligations. To avoid losing the contract, Briggs-Cockerham entered into a joint venture agreement whereby a new corporation, Seacoast Power, LLC ("Seacoast Power"), was formed to perform the contract.

In December 1995, the joint venture agreement was reduced to writing in a Statement of Principles Agreement (the "agreement"). The agreement was originally signed by three parties: Old Dominion Electrical Cooperative, a Virginia corporation; Energy Services, Inc., a Connecticut corporation; and Seacoast. Briggs executed the agreement in Texas on behalf of Briggs-Cockerham and Seacoast. At oral argument, the parties agreed that a subsequent agreement was signed by all the appellees.[3] Each of the appellees is an out-of-state corporation with no agents, offices, or property in Texas. Pursuant to the agreement's terms, Old Dominion contributed $4.5 million and a letter of credit for approximately $1.05 million. Energy Services provided approximately $5.5 million worth of equipment. Seacoast sold all of its outstanding shares of capital stock to the joint venture for $100 and transferred its rights to the Ecuadorian power contract. The electrical power operation did not go as planned. In October 1996, Ronald W. Watkins, on behalf of the joint venture, sent Briggs a letter accusing him of breaching the agreement. Appellees later sold some of the equipment to Marathon Oil, an unrelated Texas corporation.

---

[2] We refer to appellants collectively as Briggs-Cockerham unless we are referring to Michael Briggs in his individual capacity, in which case we refer to him as Briggs.

[3] This document does not appear in the record.

Subsequent to the creation of Seacoast Power, Seacoast was sued in Texas by another party on a breach of contract claim related to the Ecuadorian electric project. Briggs, as Seacoast's registered agent, received notice of the suit but failed to notify Seacoast's board of directors. Because Seacoast was never notified of the suit, it did not file an answer and a default judgment was entered. Seacoast filed a bill of review contesting the default judgment.[4]

## DISCUSSION

In one point of error, Briggs-Cockerham contests the district court's finding that appellees are not subject to jurisdiction in Texas. They contend that by purchasing Seacoast, a Texas corporation, and entering into the agreement with Briggs-Cockerham, the appellees have invoked the jurisdiction of Texas courts. We disagree.

### Standard of Review

Whether personal jurisdiction exists is a question of law. *Submersible Sys. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001); *Daimler-Benz Akteingesellschaft v. Olson*, 21 S.W.3d 707, 715 (Tex. App.—Austin 2000, pet. dism'd w.o.j.). Where the facts are undisputed, we conduct a *de novo* review of the district court's order. *Daimler-Benz*, 21 S.W.3d at 715.

The district court did not file findings of fact and conclusions of law. When a district court makes no findings, all facts necessary to support the judgment are implied and we will set aside

---

[4] *See Seacoast, Inc. v. LaCouture*, No. 03-96-00506-CV (Tex. App.—Austin Jan. 29, 1998, no pet.) (not designated for publication), 1998 Tex. App. LEXIS 505.

such implied findings only if they are so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Id.* Thus, if the evidence supports the court's implied findings, we must uphold its judgment on any valid legal theory. *Id.*

### *Jurisdiction*

The law governing Texas courts' exercise of personal jurisdiction over nonresidents is well established. *See generally CSR Ltd. v. Link*, 925 S.W.2d 591 (Tex. 1996); *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769 (Tex. 1995); *In re S.A.V.*, 837 S.W.2d 80 (Tex. 1992); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223 (Tex. 1991); *Schlobohm v. Schapiro*, 784 S.W.2d 355 (Tex. 1990); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662 (Tex. 1987). Jurisdiction is appropriately asserted over a nonresident defendant when (i) the Texas long-arm statute authorizes it and (ii) exercising jurisdiction is consistent with federal and state constitutional due process guarantees. *Schlobohm*, 784 S.W.2d at 356. Because the Texas long-arm statute permits a Texas court to extend its jurisdiction to the full extent of the United States Constitution, only the Fourteenth Amendment limits this power. *Guardian Royal*, 815 S.W.2d at 266.

Due process requirements are satisfied where the nonresident purposefully establishes "minimum contacts" with Texas such that maintaining suit here does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Guardian Royal*, 815 S.W.2d at 230-31. Generally, minimum contacts analysis involves an inquiry into the nonresident's intentional activities and expectations so as to determine whether the nonresident could reasonably anticipate being subject to Texas jurisdiction. *See World-Wide*

4

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This inquiry is necessary to determine whether the nonresident is subject to general jurisdiction—jurisdiction based on a nonresident's continuous and systematic contacts with Texas justifying suit without a relationship between the nonresident's conduct and the plaintiff's claims—or specific jurisdiction—jurisdiction based upon a nonresident's particular activity. *See Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). Briggs-Cockerham does not contend that appellees had continuous and systematic contacts with Texas sufficient to justify general jurisdiction. Instead, they allege that appellees' activities are sufficient to support specific jurisdiction.

### *Specific Jurisdiction*

Briggs-Cockerham first contends that specific jurisdiction is proper because (i) appellees contracted to buy a Texas corporation, and (ii) Briggs executed the agreement on behalf of Briggs-Cockerham in Texas. They do not contend that appellees executed the agreement in Texas. Rather, citing the Texas long-arm statute, they argue that where a nonresident "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state," then it is "doing business" in Texas and is therefore amenable to suit. Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1) (West 1997).

Because the agreement's purpose was to provide electrical power in Ecuador, the contract was not performable "in whole or in part in this state." According to Briggs-Cockerham, however, the act of purchasing a Texas corporation, by itself, satisfies jurisdictional due process requirements. It is well settled law in Texas that the unilateral acts of those claiming a relationship with a nonresident are insufficient to establish minimum contacts. *Texas Prop. & Cas. Ins. Guar.*

*Ass'n v. Boy Scouts of Am.*, 947 S.W.2d 682, 688 (Tex. App.—Austin 1997, no writ). Specific jurisdiction derives from a showing that the cause of action arises out of or relates to the nonresident defendant's purposeful contact with Texas, not the plaintiff's unilateral conduct. *TeleVentures, Inc. v. International Game Tech.*, 12 S.W.3d 900, 907 (Tex. App.—Austin 2000, pet. denied) (citing *Guardian Royal*, 815 S.W.2d at 227). Thus, when assessing minimum contacts for purposes of asserting specific jurisdiction, we focus on the relationship between the nonresident, the state, and the litigation. *Id.* at 908.

Appellees incurred no jurisdictional consequences from Briggs's unilateral execution of the agreement. For the nonresident to avail itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," the *nonresident* must do something to purposefully direct activity towards the State of Texas. *Id.* Here, appellees were not directing their activity towards Texas; rather, they were responding to contract solicitations by Briggs-Cockerham, a Texas corporation. In this context, simply contracting with a Texas corporation is insufficient to establish minimum contacts to justify the exercise of specific jurisdiction. *TeleVentures*, 12 S.W.3d at 908 (citing *Burger King Corp. v. Rudzewics*, 471 U.S. 462, 478 (1985)). Because it is clear that, in this case, contracting with a Texas resident is in and of itself insufficient to establish minimum contacts, Briggs-Cockerham's claim that Briggs's execution of the agreement confers jurisdiction must fail.

Briggs-Cockerham next contends that appellees subjected themselves to jurisdiction by returning the agreement's signature pages to Briggs. However, the test to be applied in determining jurisdiction is a highly realistic one, recognizing that contractual formalities are usually

only incidental necessities of business negotiations by which to effectuate future plans which are the real object of the business transaction. *Id.* Not in and of themselves insignificant, prior negotiations must be evaluated in conjunction with the actual terms of the contract, the parties' course of dealings, and any contemplated future consequences, thereby making the determination of whether a nonresident purposefully established minimum contacts with Texas more fair. *See id.* (citing *Burger King*, 471 U.S. at 478-79). Because the signature pages were necessary to the formation of the joint venture agreement, Briggs-Cockerham's argument on this point is without merit.

Briggs-Cockerham also alleges that in mailing the $100 consideration to Briggs, appellees purposefully availed themselves of the privilege of doing business in Texas. However, the Texas Supreme Court has made clear that mailing payments to Texas is not enough to confer jurisdiction. *See U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex. 1977).

The constitutional foundation of the minimum contacts analysis is that nonresidents must have some notice that they are amenable to suit in Texas. *See World-Wide Volkswagen*, 444 U.S. at 297. To assert specific jurisdiction, the cause of action must arise from the purposeful action or conduct of the nonresident. *Guardian Royal*, 815 S.W.2d at 227 (citing *World-Wide Volkswagen*, 444 U.S. at 297). This standard encompasses an element of foreseeability. Foreseeability is important because, in determining whether the nonresident has purposely established minimum contacts with Texas, there is an implicit requirement that there be a "substantial connection" between the conduct of the nonresident and Texas. *Id.*

Here, appellees could not have foreseen that contracting with a Texas party to provide electrical services in Ecuador would subject them to Texas jurisdiction because Briggs-Cockerham,

7

not appellees, initiated the agreement. Additionally, the contract was not performable in Texas because the sole purpose of the joint venture agreement was to provide electrical power in Ecuador. We conclude that the acts of executing the agreement, mailing the agreement's signature pages, and sending the $100 consideration for the purchase of Seacoast to Briggs in Texas, neither by themselves nor considered together, are sufficient to sustain Briggs-Cockerham's claim that jurisdiction over appellees is proper.

Briggs-Cockerham further claims that by later selling Seacoast Power's assets to Marathon Oil, a Texas corporation, appellees established minimum contacts. Having already concluded that, given the facts of this case, attempts to utilize contractual arrangements alone as a means of conferring jurisdiction are insufficient, we reject this contention.

Briggs-Cockerham also argues that the letter mailed to Briggs in Texas accusing him of breaching the joint venture agreement suffices to subject appellees to jurisdiction in Texas. However, such correspondence is insufficient to establish minimum contacts. Engaging in communications during contract performance is an invalid basis for establishing minimum contacts. *See TeleVentures*, 12 S.W.3d at 908. "The exchange of communications between [appellees] and [appellants] in the course of developing and carrying out the contract is in itself insufficient to constitute purposeful availment of the benefits and protections of Texas law." *Id.* (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)). Because we hold that neither contracting with a Texas resident nor communicating with such resident during the performance of this contract is sufficient to confer jurisdiction, we hold that a letter notifying Briggs-Cockerham of

an alleged breach and termination of the joint venture enterprise is insufficient to establish jurisdiction. *See id.* at 910-11.

At oral argument, Briggs-Cockerham argued that while each of the foregoing acts alone might be insufficient to confer jurisdiction, taken together, the acts constitute adequate contact to sustain personal jurisdiction. We disagree. The purchase of the Texas corporation, the unilateral execution of the agreement by Briggs, mailing a payment to Texas, contracting to sell Seacoast Power's assets, and mailing a breach of contract notification to Briggs simply do not constitute the purposeful availment necessary to establish minimum contacts. *See Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985).

Briggs-Cockerham next contends that, because the six appellees are the alter egos of one another, jurisdiction is proper. They do not contend that appellees are the alter ego of a Texas corporation, only that each nonresident is the alter ego of the other. To prevail on a claim of alter ego, Briggs-Cockerham is required "to prove that [they have] fallen victim to a basically unfair device by which a corporate entity has been used to achieve an inequitable result." *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 375 (Tex. 1984). Generally, this means that Briggs-Cockerham must show that appellees' corporations were used merely as a tool or business conduit of another corporation, *i.e.*, there must be proof of fraud. *Aluminum Chems., Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 67 (Tex. App.—Texarkana 2000, no pet.). Briggs-Cockerham did not plead fraud. Further, because the conduct alleged relates only to the relationship among out-of-state corporations and not to their conduct within the state, we find no basis for jurisdiction based on claims of alter ego.

Briggs-Cockerham further alleges that jurisdiction is proper because appellees agreed to share losses with one another. They do not contend that any of the appellees engaged in conduct in Texas as a consequence of the sharing agreement. This claim is similar to Briggs-Cockerham's alter ego theory. They cite no authority that an agreement to share losses has any jurisdictional consequences. Accordingly, we find no basis for asserting jurisdiction based on an agreement to share losses.

Finally, Briggs-Cockerham asserts that appellees submitted to jurisdiction by filing a bill of review in a related proceeding. This claim is no more than a conclusory statement for which they cite no authority. The bill of review was filed by Seacoast; none of the appellees participated in the filing. Because Briggs-Cockerham does not explain how Seacoast's act can be imputed to appellees and subject them to jurisdiction, we conclude this contention is without merit.

In determining whether appellees are subject to personal jurisdiction in Texas, this Court must focus its analysis on appellees' actions, not Briggs-Cockerham's unilateral acts. Appellees' only contact with Texas relates to contracting with Briggs-Cockerham to provide electrical power in Ecuador. Significantly, this contact was initiated by Briggs-Cockerham. The unilateral activity of Briggs-Cockerham will not suffice to establish jurisdiction that must result from appellees' purposeful conduct. In light of these principles, we hold that there are insufficient contacts between appellees and Texas to render constitutionally permissible an exercise of jurisdiction over appellees by a Texas court.

**CONCLUSION**

Having overruled Briggs-Cockerham's issue, we affirm the district court's order sustaining appellees' special appearance.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   October 25, 2001

Do Not Publish

11